**UNITED STATES of America,**

v.

**Francis Anthony TERRITO, Defendant.**

**Nos. 84 CR 407(S–1), 85 CR 52.**

United States District Court,
E.D. New York.

March 21, 1985.

Raymond J. Dearie, U.S. Atty., E.D. New York, Brooklyn, N.Y. (Peter J. Tomao, Asst. U.S. Atty., Brooklyn, N.Y., of counsel), for United States.

Philip Katowitz, Brooklyn, for defendant.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

Defendant moves to suppress (1) evidence seized from him as an incident to his arrest on June 27, 1984; (2) certain statements he made to Agent John Counihan after his arrest on that day; and (3) evidence seized from a tan attache case found in the trunk of the automobile he was driving at the time of his arrest. For the reasons developed below, defendant's motions are denied.

*Facts*

At the suppression hearing, the Government's witnesses, whom I find credible, testified substantially as follows.

In June, 1984, Adil Aziz was arrested at Kennedy Airport for importing heroin into this country from Pakistan. Aziz cooperated with the government by supplying the names of certain individuals involved in the heroin transaction, including those of Aftad Kadir and Shabbir Siddiqui. Following Kadir's arrest, the government focused on Siddiqui.

Siddiqui telephoned Aziz several times to buy heroin from Aziz. At one point, Siddiqui proposed that Aziz deposit a sample of the heroin in an open window of an unoccupied black Chevrolet, license number 368 YKL, which would be parked near the Bossert Hotel in Brooklyn. At the government's request, however, Aziz insisted on a face to face meeting.

On June 27, 1984, several DEA agents watched as a confidential informant, posing as Aziz, met Siddiqui near the Bossert hotel. The two men entered a nearby coffee shop where they discussed the transaction and exchanged the sample. The agents then observed Siddiqui and the informant leave the coffee shop and walk up the block to the fire hydrant across from the hotel. There, the men talked for a few minutes until a black Chevrolet, license number 368 UKL, pulled up beside them. Siddiqui entered the car, and it began to pull away. Instantly the agents stopped the car and arrested Siddiqui and the car driver. The driver was the defendant, Francis Territo.

Before driving Territo's car back to the DEA office in the United States Courthouse, Agent Counihan searched the driver's seat. He found a folding pocketknife and the sample packet of heroin given to Siddiqui. An inventory search conducted at the DEA garage by Agent Melvin revealed a note pad containing the address of the Bossert Hotel and a glass vial taken from the passenger compartment, as well as a tan attache case found in the trunk.

Meanwhile, Territo had been placed in a lock-up room at the DEA office. Agent Counihan read Territo his *Miranda* warnings, and Territo indicated that he understood his rights and that he desired to speak to the agents. Agent Counihan then interrogated Territo for approximately ten minutes. During this interrogation, Territo gave oral consent to a search of the attache case. Shortly thereafter, Territo was arraigned before United States Magistrate A. Simon Chrein.

Before a bail hearing held the next day, the prosecutor and one or more DEA agents again asked Territo and his counsel to consent to a search of the attache case.[1] Although Territo refused to sign a written waiver, he stated, nevertheless, that there were documents in the case, including a copy of the deed to his home.

On June 28, 1984, the agents obtained a warrant to search the attache case. They then searched the case and seized its contents.

### Discussion

#### Probable Cause

Initially, defendant Territo moves to suppress everything that was seized as an incident to his arrest (including his post-arrest statements) on the ground that he was arrested without probable cause.

The Second Circuit has noted that:

[a]lthough the existence of probable cause must be determined with reference to the facts of each case, in general probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient in themselves to warrant a person of reasonable caution in the belief that (1) an offense has been or is being committed (2) by the person to be arrested.

*United States v. Fisher*, 702 F.2d 372, 375 (2d Cir.1983) (citations omitted).

Defendant concedes, as he must, that the agents had probable cause to arrest Siddiqui. He emphasizes, however, that his name was never mentioned by any of the alleged co-conspirators and that Siddiqui had originally indicated that the black Chevrolet would be parked and *unoccupied*. Thus, defendant argues, his mere presence in the automobile should not give rise to the inference that he was involved in the heroin scheme.

I disagree. The government had certain knowledge that a crime was being committed by Siddiqui. At the hearing, Agent Counihan testified that Siddiqui had indicated that another party would be involved in the transaction. Moreover, Siddiqui had indicated that a black Chevrolet with the license number 368 YKL would be near the Bossert Hotel to facilitate the transaction. On the day of arrest, Territo appeared on the scene driving a black Chevrolet bearing a nearly identical license plate. Territo stopped the car and Siddiqui, who now had gotten the sample of heroin, entered the car.

Viewing the circumstances in their entirety, the inference is inescapable that the agents had probable cause to arrest defendant Territo.[2] *Cf. United States v. Marin*, 669 F.2d 73, 82 (2d Cir.1982).

#### Post-Arrest Statements

Defendant does not contest that his *Miranda* warnings were properly adminis-

---

1. Although Territo had previously given oral consent to a search of the case, the agents elected not to act on the basis of this consent. The government concedes that Territo's oral consent was subsequently revoked by Territo's counsel, who insisted that the agents obtain a search warrant.

2. It should be noted that since the agents clearly had probable cause to stop the car and arrest Siddiqui, they were justified in conducting at least a limited search of the vehicle. *See United States v. Ross*, 456 U.S. 798, 825, 102 S.Ct. 2157– 2172, 72 L.Ed.2d 572 (1982); *New York v. Belton*, 453 U.S. 454, 460–61, 101 S.Ct. 2860, 2864– 65, 69 L.Ed.2d 768 (1981). *Cf. Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 3480, 77 L.Ed.2d 1201 (1983). Because the sample was discovered under the driver's seat before Territo made any incriminating statements, its presence under Territo's seat may be considered in determining whether his arrest was supported by probable cause. *United States Ex Rel. Wright v. Cuyler*, 563 F.2d 627, 631 (3rd Cir.1977).

tered at the DEA office. Defendant moves to suppress his subsequent statements, however, contending that in light of the totality of the circumstances, the statements were involuntary.

■ The government bears the burden of proving that "the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." *Miranda v. Arizona*, 384 U.S. 436, 475, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694 (1966). The Supreme Court has noted that "the determination whether statements obtained during custodial interrogation are admissible against the accused is to be made upon an inquiry into the totality of the circumstances surrounding the interrogation...." *Fare v. Michael C.*, 442 U.S. 707, 724–25, 99 S.Ct. 2560, 2571–72, 61 L.Ed.2d 197 (1979).

■ In the instant case, the interrogation took place in an atmosphere notably devoid of threats or violence. Although up to three agents were present during the interrogation, no agent was armed. The entire interrogation lasted approximately 10 minutes.

Defendant argues that he was not permitted to communicate with his family. There is no indication, however, that defendant ever requested to see a family member prior to his arraignment. Moreover, it is significant that less than two hours elapsed between the time of arrest at the Bossert Hotel and the time of arraignment. Accordingly, I find no merit to this contention.

■ Defendant also contends that he was not advised that an attorney had already been appointed to represent him and that he had a right to communicate with *that* lawyer prior to making any statements. Clearly, defendant's Sixth Amendment right to counsel had not attached at the time of the interrogation since defend-

ant had not been indicted, nor had adversary proceedings otherwise begun.[3] *Edwards v. Arizona*, 451 U.S. 477, 481 n. 7, 101 S.Ct. 1880, 1883 n. 7, 68 L.Ed.2d 378 (1981); *United States v. Duvall*, 537 F.2d 15, 23 (2d Cir.), *cert. denied*, 426 U.S. 950, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976).

■ The Supreme Court has recognized that an accused has a Fifth Amendment right to have counsel present during custodial interrogation. *Edwards*, 451 U.S. at 482, 101 S.Ct. at 1883. In *Edwards*, the Court held:

> [W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights.

451 U.S. at 484, 101 S.Ct. at 1884. In the instant case, however, defendant did not invoke his right to have an attorney present during the interrogation. *Cf. Fare v. Michael Co.*, 442 U.S. at 724–28, 99 S.Ct. at 2571–73; *Michigan v. Mosley*, 423 U.S. 96, 101 n. 7, 96 S.Ct. 321, 325 n. 7, 46 L.Ed.2d 313 (1975). Based upon the totality of the circumstances, I find that defendant waived his Fifth Amendment right to counsel. *North Carolina v. Butler*, 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979).

Significantly, there is no indication that defendant's counsel had instructed the agents to cease the interrogation, or for that matter, that the interrogating agents were even aware that counsel had appeared for defendant. *Cf. United States v. Howard*, 426 F.Supp. 1067, 1071 (W.D.N.Y. 1977). Indeed, Agent Reape testified that he and the other interrogating agents first learned that an attorney had been appointed for Territo when they arrived in the courtroom forty minutes later for the arraignment.

---

**3.** It is well-established that "waivers of Sixth Amendment rights must be measured by a 'higher standard' than are waivers of Fifth Amendment rights." *United States v. Mohabir*, 624 F.2d 1140, 1146 (2d Cir.1980). *See United States v. Duvall*, 537 F.2d 15, 21 (2d Cir.), *cert. denied*, 426 U.S. 950, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976). I need not decide, however, whether defendant's waiver would have sufficed under Sixth Amendment analysis.

Notably, this case did not involve pre-arraignment questioning by the *prosecutor*, a practice frowned upon in this circuit. *See United States v. Foley,* 735 F.2d 45, 48 (2d Cir.1984); *United States v. Duvall,* 537 F.2d 15, 23 (2d Cir.), *cert. denied,* 426 U.S. 950, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976). Nor is there any indication that the agents were acting as the alter ego of the prosecutor at the time of the interrogation. *See United States v. Jamil,* 707 F.2d 638, 645 (2d Cir.1983).

Viewing the circumstances in their entirety, I conclude that the government has sustained its burden of proving that defendant's statements were voluntary. Accordingly, defendant's motion is denied.

*Contents of Attache Case*

Defendant Territo moves, finally, to suppress the contents of the tan attache case seized from the trunk of his car. He argues (a) that the affidavit in support of the search warrant was inadequate and (b), in any event, the affidavit contained information obtained in violation of defendant's right to counsel. For the reasons discussed below, defendant's motion is denied.

First, it is questionable whether the agents even needed a warrant to search the attache case. Since the agents had probable cause to believe that the automobile contained evidence of narcotics trafficking, they might have searched the vehicle and its contents at the time of arrest. *United States v. Ross,* 456 U.S. 798, 825, 102 S.Ct. 2157, 2172, 72 L.Ed.2d 572 (1982). Likewise, the contents of the car could have been searched once the vehicle was impounded at DEA headquarters. *See United States v. Johns,* —— U.S. ——, 105 S.Ct. 881, 887, 83 L.Ed.2d 890 (1985). In *Johns,* the Supreme Court upheld a container search conducted at a DEA warehouse three days after the container had been removed from an impounded vehicle, noting that:

[W]here police officers are entitled to seize the container and continue to have probable cause to believe that it contains contraband, we do not think that delay in the execution of the warrantless search is necessarily unreasonable.

*Id.*

██ Nonetheless,—and commendably—the agents did obtain a warrant for the search. Considering the information presented to the Magistrate to get the warrant, as well as the evidence adduced at the suppression hearing, I conclude that the supporting affidavit supplied probable cause for the issuance of the warrant. *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). I am not persuaded by the argument that the agents relied on information obtained in violation of defendant's right to counsel, since it is clear that no intrusion into the attorney-client relationship had occurred.[4] *See Weatherford v. Bursey,* 429 U.S. 545, 559, 97 S.Ct. 837, 845, 51 L.Ed.2d 30 (1977). Nor do I find any persuasive evidence of a knowing or reckless falsehood in the affidavit. *Franks v. Delaware,* 438 U.S. 154, 156–57, 98 S.Ct. 2674, 2676–77, 57 L.Ed.2d 667 (1978).

In any event, I conclude that the agents acted in good faith in applying for and relying on the warrant. Moreover, there has been no suggestion that the Magistrate abandoned his neutral and detached role in issuing the warrant. Under these circumstances I conclude that even if the warrant were invalidated, suppression of the evidence seized pursuant to the warrant would be inappropriate. *United States v. Leon,* —— U.S. ——, 104 S.Ct. 3405, 3421–3423, 82 L.Ed.2d 677 (1984).

*Conclusion*

Defendant's motion to suppress the physical evidence seized from his person and

---

**4.** The claim that agents eavesdropped on conversations between Territo and his attorney is totally unsupported by the evidence. Indeed, Territo's attorney testified that the statements regarding the contents of the attache case were made in the presence of the agents during a conversation between himself, Territo and the prosecutor.

effects and his post-arrest statements made at the DEA office is denied.

SO ORDERED.