UNITED STATES of America

v.

**Eid HAMMAD and Taiseer Hammad and Abdel Hammad, Defendants.**

No. CR–87–232.

United States District Court,
E.D. New York.

Sept. 21, 1987.

On Motion to Reconsider
November 12, 1987.

Sean O'Shea, Asst. U.S. Atty., E.D.N.Y., Brooklyn, N.Y., for plaintiff.

Harvey L. Greenberg, New York City, for Eid Hammad.

Robert Hill Schwartz, Richard A. Greenberg, New York City, for Taiseer Hammad.

James Evans Siff, New York City, for Abdel Hammad.

GLASSER, District Judge:

The defendant Taiseer Hammad moves this court to suppress certain statements made by him to a government agent on October 9, 1986 and October 14, 1986. In addition, the defendant moves this court to sever him from the trial of his co-defendants, dismiss counts 36–38 and 45 of the indictment, and direct the government to file a bill of particulars and other discovery relief pursuant to F.R.Cr.P. 7(f) and 16.

On April 15, 1987, the grand jury indicted the defendant in this case for Medicaid fraud, mail fraud, and obstruction of justice. The indictment also charges Mr. Hammad's co-defendants, Eid and Abdel Hammad, with arson and insurance fraud. This court will first turn to the motion to suppress which entails the attempted obstruction of justice charge against defendant Taiseer Hammad.

## SUPPRESSION

The government accuses the defendants of claiming Medicaid reimbursements for selling orthopedic shoes when in fact they were selling ordinary shoes to Medicaid recipients. Wallace Goldstein was employed by a company that supplied shoes to the Hammad Department Store which was owned by the defendants. On October 9, 1986, prior to the indictment, Mr. Goldstein telephoned Taiseer Hammad to inform him that he had been subpoenaed by a grand jury. They discussed this subpoena over the telephone, and then again in person at Mr. Goldstein's Manhattan store on October 14, 1986. Second Affidavit of Richard Greenberg for defendant at 3.

Without Mr. Hammad's knowledge, Agent Frank Napoli of the Bureau of Alcohol, Tobacco, and Firearms recorded these telephonic conversations with Mr. Goldstein, and videotaped the meeting. *Id.* at 2. Mr. Hammad contends that Mr. Goldstein

and Agent Napoli acted as the "alter egos" of the Assistant United States Attorney ("prosecutor") assigned to this case. Defendants' Supplemental Memo. at 4. As such, the defendant argues that the prosecutor violated the Model Code of Professional Responsibility, DR 7–104(A)(1), adopted in New York, which provides:

> During the course of his representation of a client a lawyer shall not:
>
>> Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so.

In response, the government first contests the defendant's assertion that he was represented by counsel in this criminal matter, and that the government knew of this representation, at the time of the recordings. Government's Memo. at 18–21. Both in his Supplemental and Reply Memoranda and by the affidavits of Richard Greenberg, Esq. and George Weinbaum, Esq., Taiseer Hammad counters that he was represented by Mr. Weinbaum in the criminal matter at the time of the government's recordings. Furthermore, he states that the prosecutor knew of this representation by mid-July of 1986. Defendant's Supp. Memo. at 1.

Because this issue was sharply disputed by the parties, this court held a hearing on September 17, 1987 for the purpose of resolving it. At that hearing, the court heard only the testimony of Mr. Weinbaum who was called as the defendant's witness. The government offered no evidence. On the basis of the hearing and the papers submitted by the parties, the court finds that the government was clearly aware, by at least as early as September 9, 1986, that Mr. Hammad had retained counsel in connection with this case.

In its memorandum of law, the government admits that Mr. Weinbaum informed the prosecutor that he represented "all three." Gov't. Memo at 20. The government suggests that "all three" meant Eid Hammad, Abdel Hammad, and Hammad

Department Store. *Id.* Mr. Weinbaum affirms that he meant all three defendants, Eid, Abdel, and Taiseer Hammad. Affidavit of Weinbaum at 4. Based on the testimony at the hearing, the court finds Mr. Weinbaum's version acceptable. Furthermore, the court finds that the prosecutor understood Mr. Weinbaum to mean Eid, Abdel, and Taiseer Hammad, especially since Mr. Weinbaum had previously informed him that he represented Taiseer Hammad in a closely related civil matter. Gov't. Memo. at 19.

Even taking the government's assertion of ambiguity as true, it should have, at the very least, pursued its inquiry into the nature of Mr. Weinbaum's representation before sending its agent to discuss the subject matter of this case with Mr. Hammad. Instead, the prosecutor merely requested that Mr. Weinbaum send a letter stating explicitly whom he represented. Gov't. Memo. at 20. Mr. Weinbaum's failure to accede to this request did not justify the government to assume that he no longer represented Mr. Hammad.

As this court finds that Mr. Hammad was represented by counsel at the time of the government's recordings, it now must decide whether DR 7–104(A)(1) applies. As unequivocally pronounced in *United States v. Jamil,* 707 F.2d 638, 645 (2d Cir.1983), this disciplinary rule "may be found to apply in criminal cases, [citations omitted]; and to government attorneys. [Citation omitted] The rule also may be found to apply to non-attorney government law enforcement officials when they act as the alter ego of government officials."

The defendant in *Jamil* was recorded by an agent of the United States Customs Service in a non-custodial setting and prior to indictment. Even though the government knew that the defendant was represented by legal counsel in connection with its investigation, the Second Circuit declined to suppress the recording on the ground that it violated DR 7–104(A)(1). *United States v. Jamil,* 707 F.2d at 646. The court declined to suppress solely because of a finding that the Customs agent was not an alter-ego of the prosecutor—not

because of the defendant's pre-indictment status, or because of the non-custodial setting, or because DR 7–104(A)(1) did not dictate that result. *Id.*

The facts before this court plainly establish Mr. Goldstein and Agent Napoli as the alter-egos of the prosecutor. The Government's memorandum of law states that "the prosecutor directed the witness [Mr. Goldstein] to call Taiseer." Gov't. Memo. at 18. The government continues by recounting that the prosecutor's conversations with Mr. Weinbaum took place "[p]rior to directing the government witness and agents to employ this investigative tactic [recording and videotaping]." *Id.* at 19. Finally, the prosecutor supplied Mr. Goldstein with a sham subpoena that purported to order Mr. Goldstein to appear before a grand jury as a ploy to extract damaging statements from Mr. Hammad. First Affidavit of Richard Greenberg for defendant at Exhibit G.

In stark contrast to these facts, the Second Circuit in *Jamil* stated: "We emphasize that in this case the United States Attorney only became aware of the recording *after* it was made, and he neither took part in the decision to record the conversation nor had knowledge that the conversation would be recorded." *United States v. Jamil*, 707 F.2d at 646. The Second Circuit expressly left open the questions "whether DR 7–104(A)(1) would have been violated in this context if the investigator *had* been acting as the prosecutor's alter ego or to decide whether suppression would have been warranted *if* the disciplinary rule had been violated." *Id.*

This court now answers these questions in the affirmative. The government relies on three cases in contesting the first of these conclusions. First, the government cites *United States v. Vasquez*, 675 F.2d 16 (2d Cir.1982). That case is clearly distinguishable in that the district court there found that the defendant was not represented by counsel at the time of the undercover recording. *Id.* at 17.

Second, the government turns to *United States v. Kenny*, 645 F.2d 1323 (9th Cir.), *cert. denied*, 452 U.S. 920, 101 S.Ct. 3059, 69 L.Ed.2d 425 (1981). However, in that case, the question of the "alter-ego" status of the informant was either not raised or not discussed. The *Kenny* court was of the view that the investigative techniques used by the government in that case did not implicate the type of ethical problem aimed at by the Code of Ethics. It said: "While the present case provides no opportunity for us to say just when the ethical line may be crossed ... we do not believe it has been crossed here." *Id.* at 1339. Having concluded, for the reasons stated, that the informant here was the alter ego of the prosecutor, this court also concludes that the ethical line has been crossed here. Likewise, the government's third case, *United States v. Lemonakis*, 485 F.2d 941 (D.C.Cir.1973), *cert. denied*, 415 U.S. 989, 94 S.Ct. 1586, 39 L.Ed.2d 885 (1974), involved an informant who was not "the 'alter ego' of the U.S. Attorney's office." *Id.* at 956.

More instructive and apposite is the observation made by the Tenth Circuit:

once a criminal defendant has either retained an attorney or had an attorney appointed for him by the court, any statement obtained by interview from such defendant may not be offered in evidence for any purpose unless the accused's attorney was notified of the interview which produced the statement and was given a reasonable opportunity to be present. To hold otherwise, we think, would be to overlook conduct which violated both the letter and the spirit of the cannons of ethics.

*United States v. Thomas*, 474 F.2d 110, 112 (10th Cir.), *cert. denied*, 412 U.S. 932, 93 S.Ct. 2758, 37 L.Ed.2d 160 (1973); *accord United States v. Killian*, 639 F.2d 206, 210 (5th Cir.), *cert. denied sub nom.*, *Brunk v. United States*, 451 U.S. 1021, 101 S.Ct. 3014, 69 L.Ed.2d 394 (1981); *United States v. Howard*, 426 F.Supp. 1067, 1071 (W.D.N.Y.1977).

As the case before this court concerns communications by an alter ego of the prosecutor with a party represented by counsel on the subject of that representation, this court concludes that the prosecu-

tor did violate DR 7–104(A)(1) and that the statements of Taiseer Hammad thus obtained should be suppressed in the exercise of the court's supervisory power. *See United States v. Foley,* 735 F.2d 45, 48–49 (2nd Cir.1984), *cert. denied sub nom., Edler v. United States,* 469 U.S. 1161, 105 S.Ct. 915, 83 L.Ed.2d 928 (1985). This decision is also in harmony with the spirit of the Supreme Court's decision in *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964); *see also United States v. Henry,* 447 U.S. 264, 275 n. 14, 100 S.Ct. 2183, 2189 n. 14, 65 L.Ed.2d 115 (1980). As the post-indictment, non-custodial, surreptitious interrogation of a defendant implicates the Sixth Amendment, this court reasonably concludes that the same type of interrogation in a pre-indictment context violates DR 7–104(A)(1). Indeed, that rule attempts to effectuate many of the same values embodied in the Sixth Amendment. *Cf. United States v. Jamil,* 546 F.Supp. 646, 657 (E.D.N.Y.1982) (suggesting that DR 7–104(A)(1) sets a higher standard than the Sixth Amendment), *rev'd,* 707 F.2d 638 (2nd Cir.1983).

■ In so deciding, the court has considered the concern voiced in *United States v. Vasquez* that application of DR 7–104(A)(1) to criminal investigations could allow criminals to escape undercover investigation by simply retaining counsel. However, this court limits its holding to instances in which a suspect has retained counsel specifically for representation in conjunction with the criminal matter in which he is held suspect, and the government has knowledge of that fact. This limitation is also explicit in DR 7–104(A)(1). Therefore, this rule would not apply to the vast majority of undercover investigations where the suspects are unaware of any investigation. The concern expressed in this regard in *Vasquez* is, perhaps, exaggerated.

## SEVERANCE

■ Taiseer Hammad also moves for severance from the trial of his co-defendants, Eid and Abdel Hammad, pursuant to F.R.Cr.P. 8(b) or F.R.Cr.P. 14. On November 30, 1984, the Hammad Department Store burned down. The government charges Eid and Abdel, but not Taiseer, with arson and insurance fraud in addition to the Medicaid and mail fraud. Taiseer was in Israel at the time of the fire. Defendant Taiseer Hammad first argues that there is an insufficient nexus between the Medicaid fraud scheme and the arson/insurance fraud scheme to justify his joinder with the co-defendants.

The question that this court must decide in ruling on Mr. Hammad's motion "is whether the co-defendants 'participated ... in the same series of acts or transactions constituting an offense or offenses.' " *United States v. Papadakis,* 510 F.2d 287, 300 (2d Cir.), *cert. denied,* 421 U.S. 950, 95 S.Ct. 1682, 44 L.Ed.2d 104 (1975) (quoting F.R.Cr.P. 8(b)). "[P]articipation in a series of transactions does not require participation in each transaction." *United States v. Teitler,* 802 F.2d 606, 615 (2d Cir.1986).

The government alleges in its indictment that· the arson/insurance fraud was, in part, a continuation of the Medicaid scheme in so much as the Hammads allegedly burned their store "in order to thwart the DSS audit of the store's corporate books and records." The government also notes that "both schemes [Medicaid and arson/insurance] involved the use of the Hammad Department Store as a means to accomplish criminal ends." Gov't. Memo. at 4.

Even the defendant recognizes "that joinder is generally tested by the allegations on the face of the indictment." Def.'s Memo. at 8. And "that Rule 8(b) has been liberally construed in favor of joinder." *Id.* at 3. The government contends that "the arson/insurance fraud scheme is inextricably connected to the Medicaid mail fraud scheme." Gov't. Memo. at 4. "If the government is able to prove this connection at trial, joinder certainly will have been proper. [Citation omitted]. If not, the government assumes the risks attendant upon such failure of proof." *United States v. Turoff,* 652 F.Supp. 707, 711 (E.D.N.Y.1987).

Taiseer Hammad also asks for severance under F.R.Cr.P. 14 because he would be

prejudiced by the joinder. He compares his case with that of *United States v. Sampol*, 636 F.2d 621 (D.C.Cir.1980). That case, however, involved the joinder of a defendant charged only with perjury and misprision of felony with defendants charged with the bombing assassination of the former Chilean ambassador to the United States and an American associate. The difference in the seriousness of the joined crimes is not nearly so extreme in the case before this court.

Furthermore, the court believes that a properly charged jury will be able to "keep separate the evidence that is relevant to each defendant and render a fair and impartial verdict." *United States v. Kahaner*, 203 F.Supp. 78, 81–82 (S.D.N.Y.1962), *aff'd*, 317 F.2d 459 (2d Cir.), *cert. denied*, 375 U.S. 835, 84 S.Ct. 62, 11 L.Ed.2d 65 (1963). Accordingly, this court declines to exercise its discretionary authority to sever under Rule 14. As the court also decides that joinder is proper under Rule 8(b), the motion to sever must be denied.

## MAIL FRAUD MAILINGS

Taiseer Hammad protests that three of the mail fraud counts fall outside the period of time the government alleged for the period of the mail fraud scheme. The indictment sets that period to "[o]n or about and between the 5th of May, 1984 and the 17th day of May, 1985, both dates being approximate." Count 36, however, concerns a mailing on May 22, 1985; count 37, a mailing on May 30, 1985; and count 38, a mailing on September 26, 1985.

■ It is settled law that it does not matter if the indictment charges that a specific act occurred on or about a certain date and the evidence indicates that, in fact, the act occurred on another date. It is enough if there is a substantial similarity between the dates alleged in the indictment and the date established by the evidence. *See* Sand, Modern Federal Jury Instructions 3–20 (1987); *United States v. Morris*, 700 F.2d 427, 429 (1st Cir.1983), *cert. denied sub nom.*, *Graham et al. v. United States*, 461 U.S. 947, 103 S.Ct. 2128, 77 L.Ed.2d 1306 (1983). The essential consideration is whether the indictment informed

the defendant of the nature of the charge against him, gave him sufficient notice of the crime with which he is charged and did not subject him to being put in jeopardy twice. *See, e.g., United States v. Pagan*, 721 F.2d 24, 27 (2nd Cir.1983); *United States v. Heimann*, 705 F.2d 662, 666 (2nd Cir.1983). The defendant here is precisely informed in counts 36, 37, and 38 of the dates of the mailings alleged to violate 18 U.S.C. § 1503. The defendant cannot be twice placed in jeopardy as to those mailings. This case is clearly much stronger than those in which a variation between indictment and proof has been sustained. The motion to dismiss counts 36–38 is denied. *See also United States v. Matis*, 476 F.Supp. 1287, 1294 (S.D.N.Y.1979).

## GRAND JURY PROCEEDINGS

■ Mr. Hammad asserts that at the time of the alleged attempt to obstruct justice, there was no ongoing grand jury proceeding within the meaning of 18 U.S.C. § 1503. The government acknowledges that an ongoing grand jury proceeding is a prerequisite to an obstruction of justice charge. The court accepts the government's representation as true that a grand jury proceeding did exist at the time of the alleged attempt to obstruct justice. Gov't. Memo. at 12. If the defendant has any doubts as to the veracity of the government's statement, the court will entertain a request to review *in camera* the government's materials.

## VENUE

■ Taiseer Hammad also argues that this court is not the proper venue for trial of the obstruction charge since the alleged obstructive conduct took place in the Southern District of New York. This court concludes that the Second Circuit's decision in *United States v. Reed*, 773 F.2d 477 (2nd Cir.1985) disposes of Taiseer Hammad's venue point. That case held "that venue under § 1503 is proper in the district in which the proceeding sought to be obstructed is pending even though the would-be obstructive acts took place elsewhere." *Id.* at 486.

## DISCOVERY

■ Finally, the defendant objects to the government's refusal to supply a bill of particulars listing, *inter alia,* the names of the Medicaid recipients sold non-orthopedic shoes as part of the Medicaid fraud. Yet, the government states that "Hammad already is apprised of the names of all the recipients," by way of remittance statements provided in discovery. Gov't. Memo at 15. The defendant offered no opposition to this assertion in his Reply Memorandum of Law. *See United States v. Bortnovsky,* 820 F.2d 572, 574 (2nd Cir.1987) ("if the information sought by defendant is provided in the indictment or in some acceptable alternate form, no bill of particulars is required").

Another goal of Taiseer Hammad in requesting a bill of particulars is information about the grand jury proceeding which the government alleges he endeavored to obstruct. Again, this court will entertain a request by the defendant to review the grand jury information *in camera* which the government has indicated it is willing to provide. Gov't. Memo at 15.

As for the remainder of Mr. Hammad's discovery request, this court decides within its sound discretion not to grant that request. *See United States v. Bortnovsky,* 820 F.2d at 574. Sufficient particularity exists in the indictment as to the nature of the charges brought against the defendant, allowing him to prepare for trial and avoid surprise. *Id.*

## CONCLUSION

For the reasons set forth above, the motion to suppress of defendant Taiseer Hammad is granted. His motions to sever, dismiss, and for discovery are denied.

SO ORDERED.

### ON MOTION TO RECONSIDER

On September 29, 1987 the government filed a notice of motion requesting reconsideration of the Court's decision suppressing evidence which was issued on September 21, 1987. I will not dwell upon the procedural dispute as to whether Rule 3(j) of the United States District Courts for the Southern and Eastern Districts is applicable to this motion. The citation of *United States v. Leonard,* 639 F.2d 101 (2d Cir. 1981) by the government, however, in support of the assertion that the ten day requirement of Rule 3(j) has no application is hardly persuasive. It will suffice to say the applicability of Rule 3(j) aside, that the Court will not consider the affidavit of the Assistant United States Attorney annexed to his memorandum in support of the motion. At a hearing directed by the Court for the specific purpose of resolving fact issues to permit an informed resolution of the motion to suppress, the government declined the opportunity to offer sworn testimony which would have been subject to cross-examination. It should not be permitted to do so now.

The first case parsed by the government and which it asks the Court to reconsider is *United States v. Massiah,* 307 F.2d 62 (2d Cir.1962), *rev'd on other grounds,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). Unlike this case, there is no suggestion in *Massiah* that either the agent or the informant was acting at the direction of the prosecutor. *Massiah* explicitly recognized that the ethical rule "would prohibit an investigator's acting as the prosecuting attorney's alter ego, *but there is no suggestion that Agent Murphy was so acting here.*" 307 F.2d at 66 (emphasis added). In this case, the informant and the government agents were acting upon the instructions of the prosecuting attorney by whom the informant was furnished with a sham grand jury subpoena to accomplish the mission upon which he was launched. The government urges that *Massiah* limited the reach of the ethical rule to the case in which a person steps into the shoes of the prosecutor and can trick the defendant into giving his case away by a "lawyer's artfully contrived questions." 307 F.2d at 66. A literal application of that observation would limit the efficacy of the rule to the case in which the defendant responded to a prepared script of questions devised by the prosecuting attorney and furnished by him to the informant or the agent. Such a cramped view of *Massiah* does not appear

to have been adopted by any subsequent case of which the Court is aware.

The government then urges a re-reading of *United States v. Jamil*, 707 F.2d 638 (2d Cir.1983) confident in the belief that a critical appraisal of that decision will establish the Second Circuit's adoption of *Massiah's* "alter-ego" analysis. Specifically the government points to the following language of the court:

> In *Massiah* we noted that the purpose of DR 7–104(A)(1) is to protect a defendant from the danger of being *"tricked" into giving his case away by opposing counsel's artfully crafted questions.* There, non-lawyer government investigators had instructed an informant to tape record a conversation with defendant in a non-custodial setting after the defendant had been indicted. The court held in *Massiah* that as long as the investigators were not acting as the alter ego of the prosecutor, no violation of DR 7–104(A)(1) had occurred.

707 F.2d at 646 (emphasis added). Whether that reference to *Massiah* bespeaks an adoption of the government's cramped view of it previously discussed is at best, uncertain. It is perhaps important to note in this regard that the district court in *Jamil* found that the investigators were not the prosecutor's alter ego at the time the tape recording was made because the United States Attorney did not learn of the taping until after it had been completed. "Therefore" said the court, "under *Vasquez* and *Massiah*, although Jamil may have been entitled to the protection afforded by DR 7–104(A)(1) *at the time the recording was made*, there was no violation of that disciplinary rule here." 707 F.2d at 646 (emphasis added). It would not be unreasonable to conclude from that observation that had the United States Attorney been aware of the recording at the time it was made, as he was in this case, a different result would follow.

Continuing with its analysis of *Jamil* the government argues that by referring in that case to *United States v. Kenny*, 645 F.2d 1323, 1339 (9th Cir.), *cert. denied*, 452 U.S. 920, 101 S.Ct. 3059, 69 L.Ed.2d 425 (1981) and to *United States v. Lemonakis*, 485 F.2d 941 (D.C.Cir.1973), *cert. denied*, 415 U.S. 989, 94 S.Ct. 1586, 39 L.Ed.2d 885 (1974) the *Jamil* court rendered the alter ego concept more compelling and as clearly establishing the principle that an undercover informant is not the alter ego of the prosecutor. Concededly, *Kenny* and *Lemonakis* are virtually indistinguishable from this case and they decided that the evidence obtained need not be suppressed. It is instructive to examine the relevant portion of the decision in *Jamil* so that the *Kenny* and *Lemonakis* citations may be considered in context. In 707 F.2d at 646 the court wrote:

> ... the district judge found that the government investigators were *not* acting as the alter ego of the prosecutor at the time the recording was made, as "[t]he United States Attorney was not privy to the electronic arrangements attending the investigation," ... until after the taping had been completed.... Therefore, under *Vasquez* and *Massiah*, although Jamil may have been entitled to the protection afforded by DR 7–104(A)(1) at the time the recording was made, there was no violation of that disciplinary rule here. This holding is consistent with holdings by other circuits confronted with similar facts. See, e.g., *United States v. Kenny*, ...; *United States v. Lemonakis*....

If, as the government contends, the Second Circuit adopted the holding of *Kenny* and *Lemonakis* by citing them, the sentence immediately following the foregoing quote would surely be superfluous, viz.:

> It is unnecessary on the facts of this case to decide whether DR 7–104(A)(1) would have been violated in this context if the investigator *had* been acting as the prosecutor's alter ego or to decide whether suppression would have been warranted *if* the disciplinary rule had been violated.

707 F.2d at 646 (emphasis in original). Equally unnecessary would be the very next paragraph:

> We reject appellee's contention that the introduction of the tapes in evidence by the prosecutor would constitute a viola-

tion of DR 7–104(A)(1). Such a holding would bar prosecutors from utilizing the fruits of government investigations which are found to be lawfully conducted. *We emphasize that in this case the United States Attorney only became aware of the recording after it was made, and he neither took part in the decision to record the conversation nor had knowledge that the conversation would be recorded.*

707 F.2d at 646 (emphasis added). In *Kenny* and *Lemonakis* the United States Attorney was aware of the recording when it was made and either took part in or had knowledge that the conversation would be recorded. It seems plain that if the decisions in those cases were adopted by reference, the care taken by the Court to emphasize a sanitizing fact was unnecessary.

Research has not revealed a case in which a court explicitly held that DR 7–104(A)(1) does not apply to the investigative, that is, pre-arrest, pre-indictment stage of a case. Nor has research revealed a case in which a court has found a statement obtained at this stage to have been unethical, although they have refrained from flatly pronouncing that it could not be unethical. In addition to *Kenny* and *Lemonakis* see also *United States v. Dobbs*, 711 F.2d 84 (8th Cir.1983); *United States v. Fitterer*, 710 F.2d 1328 (8th Cir.1983); *United States v. Weiss*, 599 F.2d 730 (5th Cir.1979). And despite the now unanimous recognition that at this stage of a case no Fifth or Sixth Amendment right inures and that the court exercises its supervisory power in effectuating the ethical Rule, there is no unanimity regarding the reach of that power. Compare *United States v. Crook*, 502 F.2d 1378, 1380–81 (3rd Cir. 1974) (court without power to suppress statement obtained in violation of the Rule), *cert. denied*, 419 U.S. 1123, 95 S.Ct. 808, 42 L.Ed.2d 823 (1975), with *United States v. Thomas*, 474 F.2d 110, 112 (10th Cir.1973) (suppression an appropriate remedy), cert. denied, 412 U.S. 932, 93 S.Ct. 2758, 37 L.Ed.2d 160 (1973).

The reluctance of the courts to announce unequivocally that DR 7–104(A)(1) does not apply to the investigative stage or, if it does, that the appropriate sanction is a disciplinary proceeding for its violation and not the suppression of evidence, is most tantalizingly exemplified by *Jamil.* The reluctance of the court in *Jamil* to reaffirm the policy consideration so pithily expressed by it one year earlier in *United States v. Vasquez*, 675 F.2d 16 (2d Cir.1982) (criminal suspect should not be enabled to hamper legitimate investigation by retaining counsel) is also disquieting.

In *Spector Motor Service v. Walsh*, 139 F.2d 809 (2d Cir.1944), *vacated*, 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101 (1944), Judge Learned Hand wisely observed, at page 823 in a dissenting opinion, that it is undesirable

for a lower court to embrace the exhilarating opportunity of anticipating a doctrine which may be in the womb of time, but whose birth is distant; on the contrary I conceive that the measure of its duty is to divine, as best it can, what would be the event of an appeal in the case before it.

Perhaps this Court reads too much into what has been unsaid in *Jamil* and should not anticipate a decision still gestating in the womb of the Second Circuit. Where the decision of the appellate court is difficult to divine, however, perhaps the lower court discharges its duty by inducing its birth.

The other grounds urged upon the Court for reconsideration of its prior decision have been considered and require no further discussion. The motion to reconsider is denied.

SO ORDERED.