UNITED STATES of America

v.

Rocco Ernest INFELISE,
Robert Bellavia.

No. 90 CR 87–1, 4.

United States District Court,
N.D. Illinois, E.D.

July 25, 1991.

David Buvinger and Mitchell Mars, Asst. U.S. Attys., Chicago, Ill., for U.S.

Patrick A. Tuite, Chicago, Ill., for Rocco Ernest Infelise.

Robert F. Simone, Philadelphia, Pa., for Robert Bellavia.

## MEMORANDUM OPINION AND ORDER

ANN C. WILLIAMS, District Judge.

Defendant Infelise filed a motion for an evidentiary hearing, and to suppress statements made by him to William Jahoda after the issuance of grand jury subpoenas to him and Jahoda. Defendant Bellavia brought a motion for additional discovery with respect to tape recorded statements made by him to Jahoda after the issuance of the same subpoena, to suppress statement the same statements, and for a hearing on the above matters. For the foregoing reasons, the defendants' motions are denied.

### Defendant Infelise Suppression Motion

■■■ The court first considers defendant Infelise's motion to suppress. Throughout the grand jury investigation of this matter defendant Rocco Infelise has been represented by the Law Offices of Patrick Tuite, and has so informed the Assistant U.S. Attorneys handling the investigation. Mr. Infelise informed the government that he wished to make no statement to the government, and that all inquiries should be directed to his attorney.

Defendant claims that notwithstanding these facts, the government arranged for meetings between William Jahoda, who was then cooperating with the federal government, and Mr. Infelise, and that the government had William Jahoda engage in conversations with Mr. Infelise, some or all

of which were secretly taped by Mr. Jahoda. Prior to one of these conversations, the government issued grand jury subpoenas to Mr. Jahoda and to Mr. Infelise, and had Mr. Jahoda engage in conversations with Mr. Infelise about the grand jury subpoenas. The subpoenas served to Mr. Infelise were served to Mr. Tuite, as attorney for Mr. Infelise.

Mr. Infelise contends that the Jahoda subpoena was a "sham subpoena" since the government knew that it need not issue a subpoena to Mr. Jahoda, since he was cooperating with the government. Defendant argues that the subpoena was issued so that Mr. Jahoda's conversation with Infelise and others would have a semblance of legitimacy. Similarly, the defendant argues that the subpoenas issued to him were issued "for the purpose of having a subject matter about which William Jahoda would speak with Infelise and others."

Defendant has moved for a hearing on the above allegations, and a motion to suppress any statements obtained by William Jahoda in conversations with Rocco Infelise in 1989.[1] Defendant contends that the government violated Disciplinary Rule 7–104(A)(1) of the Code of Professional Responsibility (DR 7–104(A)(1)) in obtaining the statements. DR 7–104(A)(1) states:

During the course of his representation of a client a lawyer shall not:

(1) Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so.[2]

Defendant also relies on *United States v. Hammad*, 858 F.2d 834 (2d Cir.1988). In *Hammad* the Second Circuit found that Rule 7–104(A)(1) applies in criminal cases to government attorneys and government

1. Because there are no factual disputes concerning the circumstances surrounding the issuance of the Jahoda and Infelise subpoenas, a hearing is not necessary.

2. Defendant also notes that Local Rule 3.54 b provides:

Any attorney authorized to practice before this Court who has admitted any act or acts of professional misconduct such as fraud, deceit, malpractice or failure to abide by the provisions of the Code of Professional Responsibility of the American Bar Association may be disbarred from further practice before this Court.

law enforcement officers when they act as the alter ego of the government prosecutors. The court determined that suppression is a valid remedy when there is a violation of a disciplinary rule coupled with the misuse of grand jury subpoenas. Defendant also cites a number of other cases from the second circuit which support the court's reasoning in *Hammad.*

While the defendant rightly argues that *Hammad* supports his position on the applicability of the rule, every other circuit which has considered a motion to suppress under similar factual circumstances has found that the rule does not apply to noncustodial, investigative processes that occur before the initiation of criminal proceedings. In *United States v. Ryans,* 903 F.2d 731, 740 (10th Cir.1990), the court held that "DR 7–104(A)(1)'s proscriptions do not attach during the investigative process before the initiation of criminal proceedings." *See also, United States v. Sutton,* 801 F.2d 1346, 1365–1366 (D.C.Cir.1986), and *United States v. Dobbs,* 711 F.2d 84, 86 (8th Cir. 1983). Similarly, in *United States v. Fitterer,* 710 F.2d 1328, 1333 (8th Cir.1983), the Eighth Circuit Court of Appeals rejected the defendant's argument that once he retained counsel for a grand jury investigation, under DR 7–104(A)(1) the government could only communicate with him through his attorney, and not through an informant:

> We reject Fitterer's contention. Under his view, once the subject of an investigation retains counsel, investigators could no longer direct informants to gather more evidence. We do not believe that DR 7–104(A)(1) of the Code of Professional Responsibility was intended to stymie undercover investigations when the subject retains counsel.

This court agrees with the reasoning of these other circuits, and finds that under the facts of this case, the conversations between defendant Infelise and Mr. Jahoda cannot be suppressed.[3] Defendant Infel-

ise's statements to Mr. Jahoda were made after a subpoena had been served upon him, during the noncustodial investigative processes that occur prior to the initiation of criminal proceedings. DR 7–104(A)(1) does not apply.

Also worth noting is the *Hammad* court's distinction between communications that related to a historical investigation of discrete prior criminal acts of limited duration, and the investigation of career criminals engaged in ongoing criminal activity involving a long standing criminal enterprise, which is alleged in this case. The Court stated that, "we nevertheless believe that [DR 7–104(A)(1) ] *is* unduly restrictive in that small but persistent number of cases where a career criminal has retained counsel to represent him in connection with an ongoing fraud or criminal enterprise." 858 F.2d at 839. As the courts have noted, a career criminal's notification to law enforcement authorities that he is represented by counsel could have the effect of immunizing him from any further investigation of his criminal activities. *Ryans,* 903 F.2d at 740; *Fitterer,* 710 F.2d at 1333.

In addition, the court notes that the government's investigation in this case did not involve "sham" subpoenas. Infelise was served with a grand jury subpoena for hair and blood samples so that they might be compared with samples recovered from other crime scenes. Jahoda was issued a subpoena so that suspicion would not be aroused in Infelise or his coconspirators. Enforcement of the Infelise subpoenas was not pursued when it was determined that alternative dates and methods for compliance could be agreed upon prior to the indictment in this case. Infelise's subpoena, therefore, was not fictitious. The subpoena to Jahoda was not fictitious since it was valid, but unnecessary. The courts agree that the use of such a subpoena is an appropriate investigative tool. *See United States v. Ryans,* 903 F.2d at 737–38, n. 8. (Noting that 'government agents may em-

---

3. The court also agrees with the government's argument that the language of DR 7–104(A)(1) does not support defendant's arguments, given the facts of this case. The rule was written by lawyers, for lawyers, speaks in terms of commu-

nications with a "party", suggesting that the rule is to be applied only when adversarial proceedings have been initiated. *See also, Ryans,* 903 F.3d at 739.

ploy appropriate artifices and deception to ferret out illegal activities' (citations omitted)). *See also, United States v. Murphy,* 768 F.2d 1518, 1528–29 (7th Cir.1985) (Holding that the creation of "phantom" criminal cases is a proper means of conducting criminal investigations). For the reasons already articulated, defendant Infelise's motion to suppress and for a hearing is denied.

### Defendant Bellavia

■ Defendant Robert Bellavia moves for additional discovery with respect to tape recorded statements, to suppress statements made by him to Jahoda after the issuance of the same subpoena to Jahoda, and for a hearing on the above matters. Mr. Bellavia adopts the motion of defendant Infelise concerning statements made by Bellavia to William Jahoda, and raises additional Fifth Amendment, Sixth Amendment, and conflict of interest challenges to the Bellavia statements.

Defendant Bellavia contends that during a time when Mr. Jahoda was working in an undercover capacity, Jahoda was issued a "sham" subpoena, and thereafter engaged Bellavia in conversation. Specifically, Mr. Bellavia contends that he was the subject of tape recorded conversations on October 28, and October 30, 1989, and November 1, 1989. In addition, during the investigation that led to the indictment in this case, Bellavia had an attorney, Leland Shalgos, who also represented William Jahoda. Counsel for Bellavia contends that his late October, early November conversations with Jahoda may or may not have been "within the attorney-client umbrella" since the government "apparently knew" that Jahoda had Shalgos as an attorney, and "we can only assume" that the government knew that Shalgos also represented Bellavia for six months before the indictment was issued. Bellavia asks for a hearing on this matter, and for the court to compel the government to make available prior to the hearing all reports relative to the Jahoda–Bellavia–Shalgos relationships.

The defendant's motion is denied. First, to the extent that Bellavia adopts the arguments of defendant Infelise to support his motion to suppress, those arguments are rejected for the reasons explained above. The court also rejects defendant's Sixth Amendment claim since the Sixth Amendment provides that "an accused" is entitled to have the assistance of counsel for his defense. Bellavia was not "an accused" when the taping occurred. Further, the Sixth Amendment right to counsel attaches only when formal adversarial judicial proceedings have been initiated, e.g., formal charge, preliminary hearing, indictment, information, or arraignment. *See United States v. Gouveia,* 467 U.S. 180, 187–89, 104 S.Ct. 2292, 2296–98, 81 L.Ed.2d 146 (1984); *Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972). It is undisputed that at the time of the taping no formal charges had been instituted against Mr. Bellavia; therefore, the defendant's Sixth Amendment challenge has no basis. *See also United States v. Sutton,* 801 F.2d 1346, 1365–66 (D.C.Cir.1986) and *United States v. Fitterer,* 710 F.2d 1328, 1333 (8th Cir.1983) (Both rejecting Sixth Amendment argument under a fact pattern analogous to the instant case).

■ With respect to defendant's Fifth Amendment challenge, the right to counsel attaches only when a suspect invokes the right to counsel during custodial interrogation. *See e.g., Moran v. Burbine,* 475 U.S. 412, 421–24, 106 S.Ct. 1135, 1141–43, 89 L.Ed.2d 410 (1986); *Edwards v. Arizona,* 451 U.S. 477, 481–82, 101 S.Ct. 1880, 1883–84, 68 L.Ed.2d 378 (1981), and *Miranda v. Arizona,* 384 U.S. 436, 467–70, 86 S.Ct. 1602, 1624–26, 16 L.Ed.2d 694 (1966). In the instant case, there is no dispute that the conversations between Mr. Bellavia and Mr. Jahoda were noncustodial. The Fifth Amendment, therefore, is not implicated, and defendant's argument is rejected. *See e.g., Fitterer,* 710 F.2d at 1333.

■ Bellavia requests a hearing to determine whether the statements to Jahoda were somehow coerced. The request is denied. As the government notes, "coercive police activity is a necessary predicate to the finding that a confession is 'voluntary'" for due process purposes. *Colora-*

*do v. Connelly,* 479 U.S. 157, 165–67, 107 S.Ct. 515, 520–22, 93 L.Ed.2d 473 (1986); *United States v. Hocking,* 860 F.2d 769, 774–75 (7th Cir.1988). In the instant case, the conversations were not the result of any interrogation, but were voluntary statements made by Bellavia to Jahoda. The government correctly argues that informal statements of this kind fall within the ambit of 18 U.S.C. § 3501(d)[4] and do not require a voluntariness hearing. *See e.g., United States v. Bailey,* 728 F.2d 967, 970 (7th Cir.1984). Further, the defendant has raised no disputed factual issues regarding his admissions to Jahoda, and has failed to allege any instances of police activity that would suggest that his statements were "coerced." Accordingly, no hearing is required. *United States v. Mizyed,* 927 F.2d 979, 982 (7th Cir.1991).[5]

In further support of his motion for an evidentiary hearing on this matter, Bellavia argues that at the time of the conversations between himself and Jahoda, both of them shared the same attorney. Bellavia contends that this fact may in some way have tainted the conversations between the two men. The court also rejects this reasoning. As the defendant points out, attorney Shalgos is not the subject of the alleged taint. This is significant since in the two main cases relied on by defendant allegations of collusion or improper acts by the defense attorney, persuaded the courts that a hearing was necessary. *United States v. Wong Chi Keung,* 916 F.2d 67, 68 (2d Cir.1990); *Stano v. Dugger,* 901 F.2d 898, 902–03 (11th Cir.1990). *See also Rosenwald v. United States,* 898 F.2d 585 (7th Cir.1990). Here, there are no such allegations.[6]

Defendant contends that a hearing is still required in order to explore topics, such as, "whether Jahoda encouraged Bellavia to retain Shalgos" and "whether Shalgos was at all aware of Jahoda's informant status" in order to determine whether Jahoda and Bellavia's conversations were tainted, or within the attorney-client umbrella. The court disagrees. No hearing is necessary on this point because the defendant has offered only innuendo and speculation, without any supporting evidence that these issues really exist. As the government points out, if Mr. Bellavia has evidence that he was encouraged to share counsel with Jahoda, he could have offered it in an affidavit. Similarly, in an affidavit Shalgos could have detailed the Bellavia/Shalgos communications, if any, that were improperly communicated to Jahoda.

The government contends that it is not in possession of any Bellavia/Shalgos communications passed on by Jahoda, denies any collusion between it and Shalgos concerning Bellavia, and denies knowing that Shalgos represented Bellavia until after Jahoda ended his undercover contacts with the defendants. The government contends that Bellavia's current speculation about the Jahoda/Bellavia/Shalgos relationship is groundless. The court agrees and finds that a hearing on Shalgos' representation of Bellavia is not warranted. *United States v. Sophie,* 900 F.2d 1064, 1071 (7th Cir.1990) (hearing necessary only if disputed factual issues raised and are supported by evidence).

Bellavia also seeks discovery on the Bellavia/Jahoda/Shalgos relationship. The government contends that no discovery can

---

**4.** Title 18 U.S.C. § 3501(d) provides that:
  Nothing contained in this section shall bar the admission in evidence of any confession made or given voluntarily by any person to any other person without interrogation by anyone, or at any time which the person who made or gave such confession was not under arrest or other detention.

**5.** The court notes that the defendant has tape recordings, and in some instances, videotapes of these conversations, and has failed to allege any instance of police activity that would suggest that the conversations were coerced.

With respect to defendant's request for a hearing regarding whether the pre-indictment statements made by Bellavia to federal agents were coercive, voluntary, or violative of Bellavia's Sixth Amendment rights (paragraph 6), such a hearing, again is unnecessary. The defendant has failed to allege any facts which suggest that these statements were coerced or involuntary.

**6.** Further, since Shalgos has withdrawn from representing either former client in this case, the court need not be concerned about the possibility of a conflict of interest.

be had, because it has no information on the Bellavia/Shalgos relationship, and because such discovery is not contemplated by Rule 16. The court agrees that given the fact that defendant's argument is based entirely on speculation discovery on the allegations would be inappropriate. The request for discovery is denied.

Finally, the defendant challenges the government's issuance of "sham" subpoenas in this case, arguing that "if there is a false of phony subpoena *United States v. Jungels*, 910 F.2d 1501 (7th Cir.1990) supports suppression. Bellavia's criticism relates to the issuance of a subpoena to Jahoda, since Bellavia himself was not issued a subpoena at the time Jahoda received his. For the reasons explained above, the court finds that no phony or false subpoenas were issued to Jahoda, and the defendant's argument is rejected.[7]

Citing Justice Brennan's concurrence in *Illinois v. Perkins*, — U.S. —, 110 S.Ct. 2394, 2399–2400, 110 L.Ed.2d 243 (1990), the defendant contends that a due process analysis should be applied to this case, that the unique circumstances of this case give rise to Fifth and Sixth Amendment protections, and that suppression of Bellavia's inculpatory statements is warranted on this basis. The court disagrees.

The court has rejected the defendant's contention that the government obtained evidence from him through the use of a phony subpoena, so this argument can be rejected on that same basis. Further, as the government notes, defendant's argument has already been considered and rejected by the courts in the same context as presented in the instant case. *See United States v. Martino*, 825 F.2d 754, 762 (3rd Cir.1987). The court also notes that the facts of this case have no application to the due process concerns raised by Justice Brennan in *Perkins*. *See id.*, 110 S.Ct., at 2400. Finally, the court again notes that defendant's argument is again based on speculation and conjecture, and unsup-

ported by any evidence that the government "harassed or entrapped" the defendant into providing any evidence that it was not entitled to. Accordingly, defendant's due process argument is rejected as well.

### Conclusion

For the foregoing reasons, the defendants' motions are denied.

---

7. Finally, the court notes that the cases cited by the defendant to support his subpoena argument are not on point. For example, defendant's reliance on *Jungels* is misplaced, since that case concerns the issuance of IRS subpoenas, and does not consider the undercover use of grand jury subpoenas. *United States v. Gold*, 470 F.Supp. 1336 (N.D.Ill.1978) involved a number of abusive practices, none of which occurred here.