UNITED STATES of America

v.

John J. JOHNSON.

Cr. No. H–92–152.

United States District Court,
S.D. Texas,
Houston Division.

March 22, 1993.

Jane E. Phillips, Mark R. Rosman, Dept. of Justice, Antitrust Div., Dallas, TX, for U.S.

Lynne Liberato, Haynes & Boone, Dan Lamar Cogdell, Boyd & Cogdell, Joel Androphy, Berg & Androphy, Houston, TX, for Johnson.

## ORDER

HITTNER, District Judge.

Pending before the Court is the motion to dismiss the indictment (Document # 65) filed by defendant John J. Johnson ("Johnson"). Having considered the motion, the submissions on file, the arguments of counsel, and the applicable law, the Court determines that the motion should be denied.

In June, 1990, the United States Department of Justice, Antitrust Division, ("DOJ") commenced an investigation into alleged antitrust violations by three food services companies in Houston, Texas. The three companies allegedly engaging in bid-rigging were Glazier Foods Company ("Glazier Foods"), White Swan, Inc., and Sysco Food Services, Inc. Defendant Johnson, as vice-president and bid manager for Glazier Foods, allegedly co-conspired with the bid manager for White Swan, Inc., Maurice Johnson ("Maurice"), to execute a bid-rigging scheme. On September 31, 1990, attorney Joel Androphy ("Androphy") was retained to represent Johnson specifically in connection with the DOJ's investigation.

On March 12, 1991, Johnson's alleged co-conspirator, Maurice, executed a plea agreement with the DOJ pursuant to which Maurice pleaded guilty to bid-rigging. The agreement also required Maurice to fully cooperate in the DOJ's investigation into the alleged bid-rigging scheme. In exchange, the DOJ agreed to recommend a sentence of six-months and a $10,000 fine following Maurice's guilty plea.

Prior to Maurice's sentencing, at the behest of the DOJ, Maurice agreed to a consensually-monitored recording of a telephone conversation with defendant Johnson. Accordingly, two of Maurice's telephone conversations with Johnson were monitored and recorded by agents of the DOJ on March 20, 1991, and again on April 17, 1991. Several times throughout both conversations, Maurice suggested that Johnson cooperate with

the DOJ, notwithstanding advice to the contrary by Johnson's attorney. However, Johnson never finalized any plea agreement with the DOJ, and, eventually, on July 7, 1992, Johnson was indicted for bid rigging, making a false statement to a federal agency, and conspiring to commit mail fraud.

When the contents of the tapes were ultimately revealed, Androphy resigned as lead counsel for Johnson. Androphy argues that he felt constrained to resign as lead counsel for Johnson because his competence to serve Johnson's best interests was seriously undermined as a direct result of the improper influence exerted over his client on behalf of the DOJ. Further, defendant contends that the DOJ violated various disciplinary rules and deprived Johnson of due process of law by improperly coaxing Johnson to disregard his attorney's advice and cooperate with the DOJ. The DOJ counters that any interference with Johnson's relationship with his attorney was a result of Maurice's independent conduct and was not at the prompting of the DOJ. Alternatively, the DOJ argues that the tapings were a legitimate pre-indictment investigative technique, and, therefore, no sanction is warranted.

■ Pre-indictment constitutional violations of a defendant's rights are examined under the Due Process clause of the Fifth Amendment. *United States v. Marion,* 404 U.S. 307, 315, 92 S.Ct. 455, 460, 30 L.Ed.2d 468 (1971). Prior to indictment, a defendant is deprived of due process when the government's interference with the attorney-client relationship results in an ineffective assistance of counsel which prejudices the defendant. *United States v. Irwin,* 612 F.2d 1182, 1185 (9th Cir.1980). Prejudice to the defendant *may* result from a destruction of the defendant's relationship with chosen counsel. *Id* at 1187. Additionally, a defendant may be deprived of due process when the government engages in conduct that is so outrageous that it is shocking to the universal sense of justice embodied in the Fifth Amendment. *United States v. Russell,* 411 U.S. 423, 432, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973). The appropriate remedy for a constitutional violation may be dismissal of the indictment. *Id.* at 431–32, 93 S.Ct. at 1642–43.

■ In this case, Johnson argues that as a result of the disparaging remarks made about Androphy by Maurice, his counsel's assistance was rendered so ineffective that he was deprived of due process. Specifically, Johnson argues that he has been prejudiced because his confidence and trust in his attorney, Androphy, have been destroyed as a direct result of Maurice's improper statements to defendant.

This Court determines that Johnson's lack of confidence and trust in the competence of his attorney is not sufficiently prejudicial to warrant dismissal of the indictment. While this Court agrees that a defendant's faith in his attorney is of constitutional significance, the law is clear to the effect that the prejudice necessary for dismissal of the indictment must be more detrimental than Johnson has shown. For example, in one instance it was held that dismissal of the indictment was not warranted where government agents placed a body bug on the defendant's attorney and surreptitiously monitored a conversation between the defendant and his attorney. *United States v. Ofshe,* 817 F.2d 1508, 1516 (11th Cir.), *cert. denied* 484 U.S. 963, 108 S.Ct. 451, 98 L.Ed.2d 391 (1987). In *Ofshe,* the Eleventh Circuit stressed that "the invasion of the attorney-client relationship produced *no evidence against Ofshe*" and that since the defendant's attorney "provided zealous representation, Ofshe *was not prejudiced in his defense.*" *Ofshe,* 817 F.2d at 1516. (emphasis in original).

■ Likewise, in the instant case, the recorded conversations between Johnson and Maurice produced no evidence to be used at trial against Johnson. Further, although Androphy has resigned as lead counsel, Johnson has not shown that he will otherwise be deprived of effective assistance of counsel. Androphy remains as associate counsel for the defendant. Hence, despite what the Court considers gross impropriety of the DOJ's actions, Johnson has failed to show that he has been legally deprived of effective assistance of counsel.

Additionally, Johnson has failed to show that pursuant to existing case law, the DOJ's conduct was so outrageous as to deprive defendant of due process. Notably, "a due

process violation will be found only in the rarest and most outrageous circumstances." *United States v. Yater,* 756 F.2d 1058, 1066 (5th Cir.), *cert. denied* 474 U.S. 901, 106 S.Ct. 225, 88 L.Ed.2d 226 (1985). Indeed, there are many cases in which more egregious governmental conduct did not mandate dismissal of the indictment. *See, e.g., United States v. Melvin,* 650 F.2d 641 (5th Cir.1981) (government informant attended meetings between defendant and his attorney); *United States v. Sander,* 615 F.2d 215 (5th Cir.) (police examined defendant's attorney's confidential files on defendant's case), *cert. denied* 449 U.S. 835, 101 S.Ct. 108, 66 L.Ed.2d 41 (1980). Hence, the suggestion by Maurice that Johnson cooperate with the DOJ without his attorney's knowledge or consent does not amount to such outrageous conduct under the prevailing standard to justify dismissal of the indictment.

▮ Johnson argues that even if the DOJ's conduct did not amount to a violation of his Fifth Amendment rights, this Court should nevertheless dismiss the indictment pursuant to its supervisory powers. *See Bank of Nova Scotia v. United States,* 487 U.S. 250, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988). Dismissal of an indictment pursuant to the Court's supervisory powers is permissible only in the most egregious circumstances. *United States v. Campagnuolo,* 592 F.2d 852, 865 (5th Cir.1979). Further, the defendant must show actual prejudice resulting from the government's misconduct to warrant dismissal of an indictment. *United States v. Morrison,* 449 U.S. 361, 365–66, 101 S.Ct. 665, 668–69, 66 L.Ed.2d 564 (1981).

▮ This Court finds that, as noted earlier, the DOJ's misconduct was not so egregious to warrant dismissal of the indictment under the prevailing standard. Further, Johnson has not demonstrated that he has been actually prejudiced by the government's misconduct to such an extent that the indictment should be dismissed. *See United States v. McKenzie,* 678 F.2d 629 (5th Cir.), *cert. denied* 459 U.S. 1038, 103 S.Ct. 450, 74 L.Ed.2d 604 (1982) (reversing dismissal of indictment because no actual prejudice to defendant by government's misconduct). The taped conversations do not contain any incriminating evidence that will be used against Johnson at trial. Further, Johnson's

defense is not legally prejudiced by his alleged misgivings about Androphy and said counsel remains in Johnson's employ. Finding no prejudice to Johnson, this Court should not, within its discretion, dismiss the indictment.

Furthermore, the overwhelming majority of courts that have confronted this issue have concluded that such pre-indictment consensual tape recordings are a legitimate investigative technique by law enforcement agencies. For example, the Tenth Circuit recently held that the "government's use of an informant to initiate and record conversations with a suspect prior to indictment, but after the suspect has retained counsel in connection with the subject matter of the criminal investigation" does not violate the canons of ethical conduct. *United States v. Ryans,* 903 F.2d 731, 734 (10th Cir.), *cert. denied* 498 U.S. 855, 111 S.Ct. 152, 112 L.Ed.2d 118 (1990). Therefore, the Tenth Circuit held, it was error for the district court to suppress pre-indictment taped conversations between the defendant and the government's informant. *Id.* at 740. *Accord United States v. Sutton,* 801 F.2d 1346, 1366 (D.C.Cir.1986); *United States v. Fitterer,* 710 F.2d 1328, 1333 (8th Cir.), *cert. denied* 464 U.S. 852, 104 S.Ct. 165, 78 L.Ed.2d 150 (1983); *United States v. Kenny,* 645 F.2d 1323 (9th Cir.), *cert. denied* 452 U.S. 920, 101 S.Ct. 3059, 69 L.Ed.2d 425 (1981).

Moreover, the Fifth Circuit held, on January 26, 1993, that pre-indictment monitoring by government agents of a telephone conversation between the defendant and a co-conspirator did not violate the defendant's right to counsel under the Sixth Amendment. *United States v. Heinz,* 983 F.2d 609 (5th Cir.1993). In holding that it was error to suppress the tapes from evidence, the Fifth Circuit espoused the majority view that the ethical canons of conduct do not apply to government conduct during the pre-indictment stage of a criminal investigation. *Id.* at 613. Furthermore, the court noted that, even assuming the ethical rules did apply to pre-indictment conduct by the government, suppression of the evidence based on ethical violations would be imprudent because of "the devastating effect that such a rule would

have on undercover operations." *Id.* at 614. Thus, since the Fifth Circuit admonished that *evidence* should not be suppressed based upon violations of rules of ethics, the dismissal of an *indictment* on that basis would be even more extreme. Therefore, this Court finds that the motion to dismiss the indictment must be denied based on the Fifth Circuit's most recent pronouncement on this issue in *Heinz.*

In support of the motion to dismiss the indictment, Johnson cites *United States v. Lopez,* 765 F.Supp. 1433 (N.D.Cal.1991). In *Lopez,* the district court issued an order dismissing an indictment based on the prosecutor's ethical violation in engaging in post-indictment plea negotiations with a represented defendant. *Id.,* at 1438–44. On March 17, 1993, however, the district court's order in *Lopez* was vacated by the Ninth Circuit. *United States v. Lopez,* 989 F.2d 1032 (9th Cir.1993). In *Lopez,* the defendant argued that dismissal of the indictment was the only effective remedy for the ethical violations committed by the prosecutor in negotiating a plea with the defendant without the knowledge or consent of defendant's attorney. In this regard, Lopez contended that he was severely prejudiced by the government's misconduct because his chosen counsel was forced to withdraw from the case.

In vacating the order of dismissal, the Ninth Circuit agreed with the district court that the prosecutor's post-indictment communications with the defendant violated the canons of professional conduct, but disagreed that the appropriate remedy for such an ethical breach was dismissal of the indictment. The court noted that "[t]o justify such an extreme remedy, the government's conduct must have caused substantial prejudice to the defendant and been flagrant in its disregard for the limits of appropriate professional conduct." *Id.* at 1041 (citation omitted). In this regard, the court "fail[ed] to see how [Lopez's attorney's] withdrawal in these circumstances could be said to have substantially prejudiced Lopez in his defense." *Id.* Therefore, the court concluded, "the district court abused its discretion in dismissing the indictment." *Id.*

The Ninth Circuit's rationale in *Lopez* is directly applicable to the instant case. In this case, as in *Lopez,* the only prejudice Johnson can demonstrate is the withdrawal of Androphy as lead counsel and Johnson's loss of confidence in Androphy. Johnson does not allege that any incriminating evidence was detected as a result of the taped conversations. Moreover, the DOJ has stipulated that, even if there were any evidence derived, directly or indirectly, from the taping of the conversations between Johnson and Maurice, it would not utilize such evidence against Johnson at trial. Thus, as already noted by this Court, Johnson's defense is unaffected by Androphy's withdrawal as lead counsel and Johnson's loss of confidence in Androphy. Therefore, by the same reasoning employed by the Ninth Circuit in *Lopez,* this Court is compelled to deny the motion to dismiss the indictment since there is no legally demonstrable prejudice to Johnson as a result of the DOJ's misconduct.

Johnson also relies on *United States v. Marshank,* 777 F.Supp. 1507 (N.D.Cal.1991) in support of the motion to dismiss the indictment. In *Marshank,* the defendant's attorney deliberately collaborated with the government to secure enough information to indict the defendant for narcotics offenses. In holding that such conduct violated defendant's Fifth Amendment rights, the district court acknowledged that "interference with the attorney-client relationship is not enough, in and of itself, to constitute a due process violation, [but] [t]here must also be prejudice to the defendant." *Marshank,* 777 F.Supp. at 1521 (citation omitted). The court then determined that the defendant was clearly prejudiced by the government's misconduct because the facts suggested that absent the collaboration between the government and Marshank's attorney, Marshank would not have been indicted. *Id.* Further, the court noted that the government's misconduct lead to evidence which was "used against Marshank at every turn." *Id.* Finally, Marshank was prejudiced because the government's misconduct would likely have given the prosecution an unfair advantage at trial since most of its evidence against defendant was the product of the improper collaboration between the government and Marshank's attorney. *Id.*

This Court finds that this case and *Marshank* are distinguishable. Specifically, the DOJ's conduct in the instant case is not as egregious as the misconduct in *Marshank*. In *Marshank*, the government collaborated directly with defendant's counsel and, therefore, deliberately and consciously exploited defendant's relationship with his attorney. An attorney has a legally imposed duty not to disclose confidential information concerning his client; hence, a breach of that duty is both morally and legally improper. In this case, defendant was not deceived by his own counsel, but was deceived by his friend acting as an informant for the DOJ. Unlike the defendant's attorney in *Marshank*, there was no enforceable duty of confidentiality between Johnson and Maurice.

Further, in this case, there is no demonstrable prejudice to Johnson as a result of the DOJ's misconduct, whereas *Marshank* involved a case of specific, identifiable prejudice. The court in *Marshank* expressly determined that "the fruit of the prosecutor's transgression is the indictment itself [and] [i]n such a situation, it is simply impossible to excise the taint of the government's constitutional transgressions from the prosecution of the defendant." *Id.* at 1522. Clearly, there is no such dilemma in the instant case. The indictment of Johnson was wholly unrelated to the taping of the conversations between Johnson and Maurice. Indeed, no incriminating evidence against Johnson was even gleaned from the taped conversations, nor would any such evidence be utilized at trial as stipulated by the DOJ. Hence, unlike in *Marshank*, it *is* possible here to excise the taint of the DOJ's misconduct from the prosecution of defendant. Consequently, *Marshank* is insufficient authority to support the dismissal of the indictment in this case.

Based on the foregoing, and notwithstanding this Court's concern relative to the appropriateness of the actions of the DOJ, it is

ORDERED that the motion to dismiss the indictment (Document # 65) is DENIED.