UNITED STATES of America,
Appellant,

v.

Benjamin JAMIL, Appellee.

No. 356, Docket 82–1237.

United States Court of Appeals,
Second Circuit.

Argued Nov. 3, 1982.

Decided May 2, 1983.

David V. Kirby, Asst. U.S. Atty., E.D. N.Y., Brooklyn, N.Y. (Edward R. Korman, U.S. Atty., E.D.N.Y., Vivian Shevitz, Asst. U.S. Atty., Brooklyn, N.Y., of counsel), for appellant.

Barry Ivan Slotnick, New York City (Barry Ivan Slotnick, P.C., New York City, of counsel), for appellee.

Before TIMBERS, KEARSE and PIERCE, Circuit Judges.

PIERCE, Circuit Judge:

The government appeals from a pre-trial order of the United States District Court for the Eastern District of New York, Jack B. Weinstein, Chief Judge, entered July 2, 1982 and reported at 546 F.Supp. 646 (E.D. N.Y.1982), suppressing and excluding from evidence a tape recording of a conversation in which the defendant-appellee, Jamil, participated. The issues presented on appeal are: (1) whether the district judge abused his discretion in excluding this evidence under Rule 403 of the Federal Rules of Evidence; and (2) whether Disciplinary Rule 7–104(A)(1) of the Code of Professional Responsibility was violated by the taping of the conversation or would be violated by the introduction of the tape at trial, and thus might provide grounds for exclusion of

the tape.[1] For the reasons set forth below, we hold that pre-trial exclusion of the evidence under Rule 403 of the Federal Rules of Evidence was an abuse of discretion and that DR 7–104(A)(1) was not violated by the taping of the conversation. We, therefore, reverse the order of exclusion.

## I. *Facts*

Defendant-appellee Benjamin Jamil is the president, owner, and operator of Communication Control Systems, Inc. (CCS). Appellee does business through his main office in Manhattan, four other offices in the United States and one office in London. CCS is engaged in the business of selling counter-surveillance and security devices, including spectrum analyzers, domain reflectometers, and night vision devices. The export of some of these devices requires licensing under either the Export Administration Act, 50 U.S.C. app. §§ 2401–2420 (Supp. III 1979), or the Arms Export Control Act, 22 U.S.C. § 2778 (1976, Supp. III 1979, and Supp. V 1981).

On March 7, 1979, an export shipment of Jamil's merchandise initially bound for London and eventually for Beirut, was seized by the United States Customs Service. The following day, Special Agents of the United States Customs Service, Michael Mulcahey and Steven Rogers, executed a search warrant at Jamil's place of business in Manhattan. Both Jamil and Lawrence Herrmann, an associate of Barry Slotnick, Jamil's retained counsel, were present when the warrant was executed.

Several days later, an Assistant United States Attorney (who was assigned to the investigation of Jamil's activities) met with Slotnick, Herrmann, and Agent Mulcahey.

The probable prosecution of Jamil was discussed. Thus, it is clear that in or about March, 1979, the government agents were aware that Jamil had retained counsel to represent him in connection with the investigation.

Shortly thereafter, Joseph Sayegh, the alleged middleman in the sale of the subject merchandise from CCS to one Rafaat Hayek, telephoned Special Agent Mulcahey in an apparent effort to have the seized merchandise released. On or about March 22, 1979, John Sayegh, the son of Joseph Sayegh, telephoned Mulcahey and informed him that Joseph Sayegh had arranged to meet with Jamil at a hotel near John F. Kennedy Airport to talk about the seizure and additional future sales. Joseph Sayegh, through his son, John, who was acting as interpreter, then volunteered to cooperate with the government and to wear a recording device to the meeting. After consulting with another agent in his office, Special Agent Mulcahey agreed to supply the device, and Mulcahey placed it on Joseph Sayegh[2] on the morning of March 24, 1979.

Later that day, the meeting was held at the International Hotel near Kennedy Airport. As it happened, Slotnick attended the meeting along with Jamil, his client; also present were Joseph and John Sayegh. The meeting continued for approximately 20 minutes and was recorded in its entirety on the device worn by Joseph Sayegh. The conversation focused mainly on the seized shipment and on future business dealings between Jamil and Sayegh. The statements pertaining to the seizure of the merchandise and which are the subject of the pre-trial ruling herein are set forth in the margin.[3]

---

**1.** *See United States v. Thomas,* 474 F.2d 110, 112 (10th Cir.), *cert. denied,* 412 U.S. 932, 93 S.Ct. 2758, 37 L.Ed.2d 160 (1973).

The appellee raises no sixth amendment argument on appeal.

**2.** The record is unclear as to who wore the tape recording device—Joseph Sayegh or John Sayegh.

**3.** Ben Jamil: You said transit Jedda, I said in order for me to get a export license I need a final destination. He said I can't give you a final destination then I won't be

John Sayegh: To Beruit [sic] destination
Ben Jamil: You never said that, you never said that
Joe Sayegh: To Beruit (Arabic),
Ben Jamil: You decide.
Joe Sayegh: To Beirut from shipment to transit Jedda to Beirut.
Barry Slotnick: Can I do the following let me make a suggestion you obviously want the merchandise to Beruit I have to find out what

Two years and nine months later, on December 23, 1981, a five-count indictment was filed charging Jamil with conspiring to manufacture and ship devices in interstate and foreign commerce in violation of 18 U.S.C. § 2512(1)(a), (b), and (c) (1976), and other violations of the United States export laws, 50 U.S.C. app. §§ 2401–2420 and the Arms Export Control Act, 22 U.S.C. § 2778. On February 25, 1982, a superseding eight-count indictment was filed charging Jamil with three additional violations of the aforesaid licensing laws.

On or about June 7, 1982, appellee made a motion to dismiss the indictment on grounds that the government's conduct violated his fifth and sixth amendment rights. A hearing on the motion was held on June 7, 1982, at which time the district court indicated that "the motion to suppress [the tape recording] was implied in the motion to dismiss as lesser included relief;" the court then granted the motion to suppress from the bench based on the court's supervisory powers rather than on constitutional grounds.

Three weeks later, on July 2, 1982, the district court entered a 42 page written memorandum and order. In the order, the court adhered to its prior bench ruling to suppress the evidence, but in doing so did not rely on its "supervisory power" as it had earlier done. Instead, the court excluded the tape recording under Rule 403 of the Federal Rules of Evidence. The court ruled:

[t]he slight probative force of the recording, its cumulative nature, the time required to deal with it in court, and its probable interjection of prejudice argue for exclusion under Rule 403 of the Federal Rules of Evidence. Difficulties in redaction, inhibition of trial counsel, and strong ethical doubts about the propriety of allowing the recording in evidence, even if not sufficient in themselves to warrant exclusion, support the Rule 403 result.

546 F.Supp. at 661. Although the district court's decision was ultimately based on Rule 403, most of the opinion addressed the ethical considerations raised by DR 7–104(A)(1). The court concluded, however, that *United States v. Vasquez*, 675 F.2d 16 (2d Cir.1982) was controlling and apparently prohibited a trial court from invoking DR 7–104(A)(1) as the basis for exclusion in a situation such as that presented herein. 546 F.Supp. at 660.

The government appeals pursuant to 18 U.S.C. § 3731 (1976). On July 14, 1982, the district court stayed proceedings pending resolution of this appeal.

## II. *Exclusion Under Rule 403 of the Federal Rules of Evidence*

Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of

proper and appropriate licenses that Mr. Jamil should submit and he'll do it legally. He is not going to do anything illegal that's why he wouldn't ship it in the first place. Now if you want this merchandise Mr. Jamil will check through my office to find out what licenses are necessary.
Joe Sayegh: No problem.
Barry Slotnick: It has got to be done legally.
Joe Sayegh: (Arabic)
John Sayegh: A he wants to get this done.
Joe Sayegh: Inaudible.
John Sayegh: As much as you can.
Ben Jamil: Had he followed my advice 4 weeks ago he would have it because the export license only take 3 to 4 weeks we told this to Bastos he said no I can't wait three or four weeks I need it right away.

John Sayegh: (Arabic)
Joe Sayegh: No no (Arabic)
John Sayegh: He told you that he would stay ten days
Joe Sayegh: Ten days ten days
John Sayegh: For the license if you need it, but you but you said no it can be shipped.
Joe Sayegh: Arabic
Ben Jamil: I don't remember, I don't remember you saying 10 days I remember you said I have to have it this weekend.
John Sayegh: Okay whats the black guy why did he come to the office and
Barry Slotnick: Let me stop you John now I have got to stop you I am his lawyer I don't want you questioning Ben (inaudible).

time or needless presentation of cumulative evidence."

■ Given "the superiority of his nether position," *United States v. Robinson,* 560 F.2d 507, 515 (2d Cir.1977) (en banc),[4] *cert. denied,* 435 U.S. 905, 98 S.Ct. 1451, 55 L.Ed.2d 496 (1978), a trial judge is given broad discretion to weigh these competing interests because he is in a superior position to evaluate all of the circumstances connected with them, "since he sees the witnesses, defendant, jurors, and counsel, and their mannerisms and reactions," *id.* at 514. However, as noted by this court in *United States v. Dwyer,* 539 F.2d 924, 928 (2d Cir. 1976), "discretion does not mean immunity from accountability." Moreover, "[s]ince the trial judge is granted such a powerful tool by Rule 403, he must take special care to use it sparingly." 1 J. Weinstein and M. Berger, *Weinstein's Evidence* ¶ 403[01], at 403–7 (1982). In making a Rule 403 determination, the trial judge must make a "conscientious assessment" of whether unfair prejudice outweighs probative force. *United States v. Figueroa,* 618 F.2d 934, 943 (2d Cir.1980). A trial court's ruling on admissibility under this balancing test will not be overturned on appeal absent a clear showing of abuse of discretion. *Ballou v. Henri Studios, Inc.,* 656 F.2d 1147, 1153 (5th Cir. 1981); *United States v. Albergo,* 539 F.2d 860, 863 (2d Cir.), *cert. denied,* 429 U.S. 1000, 97 S.Ct. 529, 50 L.Ed.2d 611 (1976). The appellate court "must look at the evidence in a light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." *United States v. Brady,* 595 F.2d 359, 361 (6th Cir.), *cert. denied,* 444 U.S. 862, 100 S.Ct. 129, 62 L.Ed.2d 84 (1979). To find abuse, the appellate court must find that the trial court acted arbitrarily or irrationally. *Robinson,* 560 F.2d at 515.

When a trial court excludes evidence under Rule 403, it should provide a clear statement of its reasons for doing so on the record "so that counsel can, if possible, obviate the objection." J. Weinstein and M. Berger, *supra,* ¶ 403[02], at 403–18.

■ Here, as a preliminary matter, we note that the relevance of the proffered evidence is not in dispute. The government sought to introduce the tapes to show that appellee had attempted to ship surveillance equipment abroad knowing that the proper export licenses had not first been obtained. Knowledge is an essential element of proving a violation of both the Export Administration Act, 50 U.S.C. app. § 2410(a), and the Arms Control Export Act, 22 U.S.C. § 2778(c).

The district court herein based its decision on several factors set forth in the rule, including (1) slight probative value; (2) cumulative nature; (3) waste of time; and (4) interjection of unfair prejudice. We will consider these factors seriatim.

*(1) Probative Value*

Evidence is said to have probative value if it tends to prove or actually proves a proposition. Black's Law Dictionary 1082 (5th Ed.1979). Appellant argues that the probative value of the tape is strong since Jamil's recorded statements, in conjunction with certain documents which allegedly establish that Jamil made the shipping arrangements, are, in the government's view, "tantamount to a confession." Jamil's recorded statements are said to "confirm that he knew the shipment he attempted to send overseas was unlicensed and confirm that he knew that it required a license."

The district judge found the portions of the tape, that the government contends demonstrate Jamil's knowledge, to be slight in probative value because he found that they are:

> at least ambiguous in their import. Considering that the statements were made after defendant's merchandise was seized by Customs for failure to have licenses, they can be construed as an explanation to a customer of reasons for the delay in

4. *Quoting* Rosenberg, *Judicial Discretion Viewed From Above,* 22 Syracuse L.Rev. 635, 663 (1971).

delivery and of the need for the customer to provide information about such matters as ultimate destinations in order to obtain an export license.

546 F.Supp. at 661.

■ We agree with appellant that the probative value of the pertinent portions of the tape is substantial, since they provide direct evidence bearing upon the question of Jamil's knowledge, and, as stated above, knowledge is an element of the major crimes charged. Accordingly, we must reject the district court's conclusion that the recorded statements have only slight probative value because they could be construed as an explanation to a customer about a "delay in delivery. . . ." Even if the statements were to be so construed, they still would constitute direct evidence bearing on Jamil's knowledge or lack thereof.

*(2) Cumulative Nature*

■ Evidence is cumulative when it replicates other admitted evidence, and the exclusion of relevant, but cumulative, evidence is within the discretion of the trial court. *Hamling v. United States,* 418 U.S. 87, 127, 94 S.Ct. 2887, 2912, 41 L.Ed.2d 590 (1974); *United States v. Ives,* 609 F.2d 930, 933 (9th Cir.), *cert. denied,* 445 U.S. 919, 100 S.Ct. 1283, 63 L.Ed.2d 605 (1980); *United States v. Elksnis,* 528 F.2d 236, 238–39 (9th Cir.1975); *see International Halliwell Mines, Ltd. v. Continental Copper & Steel Industries, Inc.,* 544 F.2d 105, 109 (2d Cir. 1976).

■ Here, the district court ruled that: [t]he evidence of the recording can be justified under Rule 404(b) of the Federal Rules of Evidence grounds [sic] as showing the plan and practice of defendant in selling electronic equipment. But when used for this purpose, it is cumulative. There is no doubt that defendant was conducting a large and lucrative export business in electronic gear.

546 F.Supp. at 661. However, the government argues that it did not intend to introduce the tape in evidence for that purpose. Rather, as stated above, the tape was to be used to prove knowledge with regard to the

licensing laws. Indeed, the government stated at the June 7, 1982 hearing that the recorded statement is "an admission—one of them—that [Jamil] knew that [the items in question] were licensable."

Based on the district court's seeming misunderstanding of the reason the government was offering the tape, we must reject the court's conclusion that the evidence is cumulative. Moreover, while the government may have other proof of Jamil's knowledge and may offer it in evidence at trial, we find that it is improper at this juncture to exclude the tape based on the possibility that it may be found to be cumulative during the upcoming trial. At this stage of the litigation, when the trial has not yet commenced and no evidence has yet been put before a jury, it is premature to conclude that this evidence is cumulative. *See Holt v. Utility Trailers Mfg. Co.,* 494 F.Supp. 510, 511–12 (E.D.Tenn.1980) (at pre-trial stage, district court deferred to judgment of counsel for proponent of certain evidence that it was not cumulative). Further, when the government possesses duplicative evidence, it has the discretion to decide which evidence it will present at trial, if it is required to make an election.

*(3) Waste of Time*

■ The third factor cited by the district court in suppressing the tape pursuant to Rule 403 is "the time required to deal with it in court." 546 F.Supp. at 661. This justification for excluding relevant evidence generally arises when an excessive amount of evidence is proffered to prove a given proposition or when it raises substantial collateral issues which would cause unjustifiable delay. *See J. Weinstein and M. Berger, supra,* 403[06], at ¶ 403–57–61.

Here, the tape recording is a mere twenty minutes in length. If portions of the tape should be redacted, as may occur, its length will be reduced still further. Moreover, to the extent that collateral issues may be raised by the tape recording, it seems unlikely that they will be unduly time-consuming. The government correctly asserts

that in a trial that has been estimated to continue for three weeks or longer, concern about a delay caused by a twenty-minute tape recording seems wholly unwarranted. We conclude that no undue waste of time has been shown.

### (4) *Interjection of Unfair Prejudice*

■ The Advisory Committee on the Federal Rules of Evidence noted that "'[u]nfair prejudice' within [the context of the Rule] means an undue tendency to suggest decision on an improper basis, commonly,. though not necessarily, an emotional one." Notes of Advisory Committee on Proposed Rules, Rule 403. In the absence of a significant showing of unfair prejudice, evidence with substantial probative value should not be excluded. *Dwyer,* 539 F.2d at 928. As we stated above, the probative value of the proffered evidence is likely to be considerable since a jury might well find that it contains direct admissions by Jamil of his knowledge regarding his acts or omissions which are alleged to constitute violations of law. This being so, the tape should not be excluded unless the danger of unfair prejudice substantially outweighs its probative value.

The district court stated that admission of the tape in evidence would be likely to result in an interjection of prejudice, noting that "[t]he risk that the jury will misconstrue the conversation is substantial, particularly since use of a recording device reflected an intense interest of law enforcement officials in defendant." 546 F.Supp. at 661. Additionally, the court found that the ability of Jamil's trial counsel, Slotnick, to represent his client would be severely limited because his voice was on the recording and because he might thus be required to testify.

■ The fact of "prejudice" cannot be denied. It is evident that a tape recording made by a government informant of a conversation with a defendant does suggest that law enforcement officers were interested in the defendant. Standing alone, however, this does not constitute a sufficient showing of the type of "unfair prejudice" referred to by Rule 403, for the implication of a contrary ruling would be that evidence of this genre obtained by law enforcement officers would be inherently inadmissible, simply because it connoted interest in the person by such officers. We decline to accept such a proposition.

■ Apropos the prejudice likely to result from the presence of Slotnick's voice on the tapes and the possibility that he will be required to testify, it is premature to address whether he will be required to withdraw as Jamil's counsel as the result of possible conflict of interest under DR 5–102 of the Code of Professional Responsibility,[5] as suggested by the district court. 546 F.Supp. at 661. *See United States v. Cunningham,* 672 F.2d 1064, 1074–75 (2d Cir. 1982). In any event, this issue is not now ripe for determination and may become moot since Slotnick may seek to have the tape redacted, or seek some stipulation from the government about it, or allow the entire tape to be played.

---

5. DR 5–102 states:

(A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(B)(1) through (4).

(B) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client.[31]

. . . .

[31] This *Canon* [19] *of Ethics* needs no elaboration to be applied to the facts here. Apparently, the object of this precept is to avoid putting a lawyer in the obviously embarrassing predicament of testifying and then having to argue the credibility and effect of his own testimony...." *Galarowicz v. Ward,* 119 Utah 611, 620, 230 P.2d 576, 580 (1951). Model Code of Professional Responsibility DR 5–102 (1979); N.Y.Jud.Law App. DR 5–102 (Consol.1975).

Therefore, after careful consideration of the district court's reasoning in excluding the tape under Rule 403 and of the parties' arguments, we cannot agree that the probative value of the tape recording is substantially outweighed by the danger of unfair prejudice. Indeed, no grounds for believing that any *unfair* prejudice would result were stated by the district court.

The district judge explained in his opinion that "[d]ifficulties in redaction, inhibition of trial counsel, and strong ethical doubts about the propriety of allowing the recording in evidence, even if not sufficient in themselves to warrant exclusion, support the Rule 403 result." 546 F.Supp. at 661. We agree that these considerations, by themselves, are insufficient to warrant exclusion. Moreover, for reasons set forth below in the discussion of DR 7–104(A)(1), we also find that the "ethical doubts" herein do not provide a sufficient basis for the Rule 403 ruling.

III. *Exclusion on the Basis of Claimed Violation of Disciplinary Rule 7–104(A)(1)*

█ Disciplinary Rule 7–104(A)(1) of the Code of Professional Responsibility directs that a lawyer shall not:

[c]ommunicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so.

(footnote omitted).

Jamil contends that admission of the tape recording would violate DR 7–104(A)(1) because the rule contemplates counsel making an informed decision as to whether to permit opposing counsel to question or otherwise communicate with his client. Here, Jamil contends, such an informed decision was not made because the government failed to indicate to his counsel that it desired to communicate with him.

We first consider whether Jamil was entitled to the protection of DR 7–104(A)(1) when the recording was made in March, 1979, that is, approximately two years and nine months prior to his indictment by the grand jury in December, 1981. As a preliminary matter, we note that DR 7–104(A)(1) may be found to apply in criminal cases, *United States v. Springer,* 460 F.2d 1344, 1354 (7th Cir.), *cert. denied,* 409 U.S. 873, 93 S.Ct. 205, 34 L.Ed.2d 125 (1972); Broeder, *Won Sun v. United States: A Study in Faith and Hope,* 42 Neb.L.Rev. 483, 601 (1963); and to government attorneys. *See* H. Drinker, Legal Ethics 202 (1953). The rule also may be found to apply to non-attorney government law enforcement officers when they act as the alter ego of government prosecutors. *See United States v. Thomas,* 474 F.2d 110, 112 (10th Cir.), *cert. denied,* 412 U.S. 932, 93 S.Ct. 2758, 37 L.Ed.2d 160 (1973). However, the Rule would not require that government investigatory agencies refrain from all use of informants to gather information by tape recording conversations with a suspect. *See United States v. Kenny,* 645 F.2d 1323, 1339 (9th Cir.), *cert. denied,* 452 U.S. 920, 101 S.Ct. 3059, 69 L.Ed.2d 425 (1981); *United States v. Massiah,* 307 F.2d 62, 66 (2d Cir.1962), *rev'd on constitutional grounds,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964).

█ This court, in earlier decisions, has addressed the question of what protection is afforded by DR 7–104(A)(1) to a person prior to the commencement of formal criminal proceedings against him. Most recently, in *United States v. Vasquez,* 675 F.2d 16, 17 (2d Cir.1982), we briefly[6] addressed the question of whether DR 7–104(A)(1) was violated "entitling [the defendant] to invoke the Sixth Amendment." There, defendant had retained counsel prior to being indicted. However, prior to the filing of an indictment, but after he had retained coun-

**6.** *Vasquez* was originally decided by summary order which had no precedential value under Local Rule § 0.23, United States Court of Appeals for the Second Circuit. However, at the

request of the government's attorney, the order was published so that it might be utilized in similar cases. *See* footnote, 675 F.2d at 16.

sel, a tape recording which contained inculpatory statements by Vasquez was made. We held that no protection was afforded by DR 7–104(A)(1) under those circumstances, since "[s]uch a principle would simply enable criminal suspects, by retaining counsel, to hamper the government's conduct of legitimate investigations." *Id.* As we said in *Massiah,*

> Assuming without deciding that it would be improper for a prosecutor to interview a criminal defendant under indictment in the absence of his retained counsel, ... such a prohibition would not require that government investigatory agencies also refrain from any contact with a criminal defendant not in custody simply because he had retained counsel.

307 F.2d at 66.

In *Massiah,* we noted that the purpose of DR 7–104(A)(1) is to protect a defendant from the danger of being "tricked" into giving his case away by opposing counsel's artfully crafted questions. There, non-lawyer government investigators had instructed an informant to tape record a conversation with defendant in a non-custodial setting after the defendant had been indicted. This court held in *Massiah* that as long as the investigators were not acting as the alter ego of the prosecutor, no violation of DR 7–104(A)(1) had occurred. *Id.*

Here, as in *Vasquez,* Jamil had not yet been indicted at the time the tape recording was made,[7] and the conversation occurred in a non-custodial setting. However, unlike *Vasquez,* Jamil had retained counsel in connection with the investigation more than two and one half years prior to indictment. Therefore, the question whether the customs agents who conducted the investigation herein were acting as the alter ego of the United States Attorney may become relevant. Here, the district judge found that the government investigators were *not* acting as the alter ego of the prosecutor at the time the recording was made, as "[t]he United States Attorney was not privy to

the electronic arrangements attending the investigation," 546 F.Supp. at 651, until after the taping had been completed. *See* 546 F.Supp. at 651; Tr. 90, June 7, 1982. Therefore, under *Vasquez* and *Massiah,* although Jamil may have been entitled to the protection afforded by DR 7–104(A)(1) at the time the recording was made, there was no violation of that disciplinary rule here. This holding is consistent with holdings by other circuits confronted with similar facts. *See, e.g., United States v. Kenny,* 645 F.2d at 1339 (tape of represented person made in non-custodial, pre-indictment, pre-arrest context does not implicate the ethical problems addressed by DR 7–104(A)(1)); *United States v. Lemonakis,* 485 F.2d 941 (D.C.Cir. 1973) (similar to facts and holding of *Massiah*), *cert. denied,* 415 U.S. 989, 94 S.Ct. 1586, 39 L.Ed.2d 885 (1974). It is unnecessary on the facts of this case to decide whether DR 7–104(A)(1) would have been violated in this context if the investigator *had* been acting as the prosecutor's alter ego or to decide whether suppression would have been warranted *if* the disciplinary rule had been violated.

We reject appellee's contention that the introduction of the tapes in evidence by the prosecutor would constitute a violation of DR 7–104(A)(1). Such a holding would bar prosecutors from utilizing the fruits of government investigations which are found to be lawfully conducted. We emphasize that in this case the United States Attorney only became aware of the recording *after* it was made, and he neither took part in the decision to record the conversation nor had knowledge that the conversation would be recorded.

For the reasons set forth above, we reverse the district court's exclusion of the tape recording from evidence. We hold that each of the Rule 403 findings made by the district court is unsupported by the record and that exclusion of the tape recording by the court's pre-trial order herein constituted a clear abuse of discretion and

7. Jamil's original indictment was filed on December 23, 1981, and his superseding indictment was filed on February 25, 1982.

thus was arbitrary. The mandate shall issue forthwith.

SO ORDERED.