UNITED STATES of America

v.

Herbert GRAY.

No. 5:92–CR–53–03.

United States District Court,
D. Vermont.

June 23, 1993.

Paul Van De Graaf, Asst. U.S. Atty., Burlington, VT, for U.S.

John Sartore, Paul, Frank and Collins, Burlington, VT, for defendant.

## OPINION AND ORDER

BILLINGS, District Judge.

On June 1, 1993, defendant Herbert Gray moved to suppress all statements made by him on August 4, 1992, to Special Agents John M. Hersh and Charles McGinnis, Jr. of the Federal Bureau of Investigation, and Alan Dawson, Senior Examiner of the Federal Reserve Bank of Boston. On June 11, 1993, the government filed opposition. Defendant filed a reply and a hearing was held on June 16, 1993.

### Background

On the morning of August 4, 1992, prior to Gray's indictment in this case, Agents Hersh and McGinnis and Examiner Dawson, having decided to interview co-defendant Paul Gallerani, decided to contact defendant Gray. After two contacts with Gray's wife, it was arranged that Gray would meet the agents at Robert's Country Cooking in East Thetford, Vermont.

At the meeting, Agent Hersh asked Gray if they could speak to him concerning his activities as chairman of the Bradford National Bank ("Bradford") and as a director of the Independent Bank Group ("IBG"). Gray responded that he had an attorney and preferred not to discuss "much" concerning the IBG matter. Until this time the agents were not aware that defendant Gray had an attorney for any matter, although the agents were aware of a civil proceeding and an investigation by the Controller of the Treasury.

Defendant Gray then stated that he would answer those questions he felt comfortable with, and Agent Hersh said that would be acceptable. Agent Hersh further advised that in the event Gray did not wish to answer any of the questions, he was to say so, and they would go on to other matters.

Before questioning started and upon Gray's request, Agent Hersh gave Gray an overview of the allegations of wrongdoing with respect to the positions he held at Bradford and IBG. After this discussion, the

defendant stated he did not recall having voted in favor of Bradford's participation in a loan from the Lyndonville Savings Bank in the amount of $500,000 in connection with the so-called Kelton "Four Friends Deal". Agent Hersh then advised Gray that he had, in fact, recommended the loan participation, and voted for it. Gray then voluntarily responded "I can't argue with that one. You've got me there." Gray then added that he did not know that co-defendant Gallerani had sought an additional $25,000 in connection with the "Four Friends Deal."

During this period, Assistant United States Attorney ("AUSA") Paul Van de Graaf, the attorney in charge of this criminal prosecution, was unaware that defendant Gray had retained counsel in this criminal matter, although he was aware that Gray had retained counsel in the civil suit brought by IBG. Furthermore, at no time prior to the agents' meeting with Gray had Agent Hersh discussed his independent investigation of Gray with AUSA Van de Graaf. Finally, AUSA Van de Graaf neither directed the agents to contact Gray nor instructed the agents as to questions they should ask Gray during any such contact.

### Analysis

Defendant moves to suppress the statements made to Agent Hersh on the grounds that ethical rules, specifically Disciplinary Rule 7–104(A)(1) ("Rule") of the Model Code of Professional Responsibility, were violated. In support of this argument, defendant contends that the agents who questioned Gray were the alter-ego of the prosecutor, and further, that the "authorization by law" exception to the Rule was not applicable.[1]

This Circuit has held that the Rule applies to prosecutors and to non-attorney law enforcement officers acting as the alter-ego of prosecutors in non-custodial, pre-indictment situations. *United States v. Hammad*, 858 F.2d 834, 838 (2d Cir.1988); *United States v. Jamil*, 707 F.2d 638 (2d Cir.1983). However,

the Rule must be applied narrowly and with restraint so as not to handcuff law enforcement officers in legitimate criminal investigations. *Hammad*, 858 F.2d at 838–39; *see also United States v. Pinto*, 850 F.2d 927, 935 (2d Cir.), *cert. denied*, 488 U.S. 867, 109 S.Ct. 174, 102 L.Ed.2d 143 (1988).

In determining whether the agents were the alter ego of AUSA Van de Graaf, both *Jamil* and *Hammad* are instructive. In *Jamil* the Second Circuit found that the government investigators were not the alter ego of the prosecutor because the prosecutor did not take part in the decision to record a conversation and was not "'privy to the arrangements attending the investigation' until after the taping had been completed." *Jamil*, 707 F.2d at 646 (quoting *United States v. Jamil*, 546 F.Supp. 646, 651 (E.D.N.Y.1982)). In *Hammad* the Second Circuit found that an informant was the alter ego of the prosecutor because the prosecutor was actively involved in creating a false pretense to help the informant elicit information. *See Hammad*, 858 F.2d at 840.

■ Here, the Court finds that the agents were not operating as the alter ego of the prosecutor and, therefore, did not violate the Rule. While AUSA Van de Graff knew that at some point the agents were going to contact Gray, he did not control the agents' independent investigation of Gray, cause the agents to contact Gray or instruct them on what questions to ask during any such contact. Furthermore, unlike in *Hammad*, there was no misconduct on the part of AUSA Van de Graaf that could contribute to the agents becoming his alter ego. Consequently, the government's actions are not subject to sanctions.

■ Even if the Court found that there was an alter ego relationship, there would still be no violation of the Rule under the facts here for the following reasons. First, AUSA Van de Graff did not know Gray was represented by counsel in this criminal investigation and, therefore, communication was

---

1. DR 7–104(A)(1) provides
   A. During the course of his representation of a client a lawyer shall not;
   1. Communicate or cause another to communicate on the subject of the representation with a

party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so.

appropriate. *See* DR 7–104(A)(1). Second, the agents' activities were a legitimate investigative technique within the "authorized by law" exception to the Rule. *See Hammad*, 858 F.2d at 840.

Consequently, defendant's motion to suppress statements is hereby DENIED.

SO ORDERED.