ROBINSON V. STATE

NO. 07-99-0068-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

MAY 12, 2000

______________________________

RANDY NEIL ROBINSON, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_________________________________

FROM THE 316
TH
 DISTRICT COURT OF HUTCHINSON COUNTY;

NO. 7942; HONORABLE JOHN LAGRONE, JUDGE

_______________________________

Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

In four points of error, appellant Randy Neil Robinson challenges his conviction of indecency with a child by contact, a second degree felony, and the jury-assessed ten-year probated sentence with a $10,000 fine.  In his points, appellant argues the trial court erred by 1) admitting his oral confession, 2) admitting computer-generated writings, 3) allowing a witness to testify without adequate notice, and 4) allowing extraneous bad act evidence to be introduced during the punishment hearing.  Finding no reversible error, we affirm the judgment of the trial court.

Appellant was initially charged, at age 21, with aggravated sexual assault of a 13-year-old boy [hereafter M.T.].  However, as we noted, he was convicted of indecency with a child by contact.  At trial, M.T. testified that he and appellant were friends until appellant forced him to have anal intercourse on two separate occasions.  After these assaults, M.T.’s sister found typewritten letters in her mailbox, which were purportedly from appellant and addressed to M.T.  The letters essentially expressed appellant’s feelings for M.T. and covered various topics that appellant and M.T. had previously discussed as friends.  M.T.’s sister took the letters to her junior high school guidance counselor who then notified Child Protective Services (CPS).  A police officer later contacted appellant at his home and requested that he come to the district attorney’s office for questioning on November 26, 1996.  At the interview, appellant made certain incriminating statements but was not arrested and charged until February 13, 1997, nearly three months later.

In his first point, appellant argues that the trial court should have granted his pretrial motion to suppress an oral statement made during the November 26 interview.  Citing article 38.22 of the Code of Criminal Procedure, he posits that the statement should have been suppressed because it was obtained during a custodial interrogation.  Article 38.22 provides that an oral statement made during a custodial interrogation shall be inadmissible unless the statement is recorded and the accused is advised of his rights.  Tex. Code Crim. Proc. Ann. art. 38.22 § 3(a).  However, that statute is not applicable to this case because appellant’s statement was not the product of a custodial interrogation.

Suspects are only entitled to 
Miranda 
warnings if they are in custody.  
Miranda v. Arizona
, 384 U.S. 436, 444, 886 S.Ct. 1602, 16 L.Ed.2d 694 (1966); 
Wolfe v. State
, 917 S.W.2d 270, 282 (Tex.Crim.App. 1996).  Our Court of Criminal Appeals has held that custody occurs when “under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest.”  
Dowthitt v. State
, 931 S.W.2d 244, 254 (Tex.Crim.App. 1996). In resolving the custody question, we look to the following four factors: 1) probable cause to arrest; 2) the police officer’s subjective intent; 3) the focus of the investigation; and 4) the accused’s subjective belief.  
Id.  
Factors 2 and 4 are only relevant if the subjective thoughts are expressed by words or actions.  
Stansbury v. California
, 511 U.S. 318, 323-24, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994); 
Dowthitt
, 931 S.W.2d  at 254.  In addition, the Court of Criminal Appeals has explicated that there are four situations which may constitute custody.  
Dowthitt
, 931 S.W.2d at 255.  Those situations are: 1) when the suspect is physically deprived of his freedom of action in any significant way; 2) when the suspect is told that he cannot leave; 3) when law enforcement officers create a situation that would lead a reasonable person to believe his freedom of movement has been significantly restricted; and 4) when there is probable cause to arrest and the suspect is not told that he is free to leave.  
Id.

In the case at bar, a law enforcement officer called appellant at his home and requested that he appear the next day at the district attorney’s office to answer some questions.  The next day, appellant arrived at the office with his parents, was taken to a separate room, given his 
Miranda
 warnings, and questioned for approximately 30 minutes by two police officers and a D.A. investigator.  While appellant was not given a break during the time period, there is no evidence that he indicated a need for a break.  At no time was appellant handcuffed or told that he could not leave.  Although it is true that appellant was not 
told
 that he could leave at any time, he was, in fact, released immediately when his mother asked to speak to him after consulting an attorney.

Appellant cites 
Dowthitt
 to validate his assertion that the time length of the interrogation is an important factor in determining whether an accused is in custody.  It is true that 
Dowthitt
 mentions time length of an interrogation as a factor to consider, but that court also noted that a long time period of interrogation is not itself dispositive of the issue.  
Dowthitt
, 931 S.W.2d at 256.  Additionally, in 
Dowthitt
, the accused had been at the police station all day long, had been considered a suspect for at least six hours before he was arrested, had been accompanied by a police officer each time he went to the restroom, and had been denied requests to see his wife.  
Id
. at 256-57.  The court considered each of these factors, in addition to the length of the interrogation, in reaching its conclusion that Dowthitt had been in custody.  None of these factors are present here.  Thus, in comparing the 
Dowthitt 
factors with those present here, we do not find the three-hour interrogation period sufficient in itself to constitute custody.

To further support his argument that he was in custody, appellant argues that the police had probable cause to arrest him and he was the sole focus of the investigation.  However, 
Dowthitt
 instructs that in instances in which there is probable cause to arrest and the officers have not told a suspect that he is free to leave, that only constitutes custody if “the manifestation of probable cause, combined with other circumstances, would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest.” 
Id.
 at 255.  
See also Gonzales v. State
, 4 S.W.3d 406, 415 (Tex.App.—Waco 1999, no pet. h.).  In this case, appellant arrived at the police station voluntarily with his parents.  In fact, his parents waited outside the interrogation room the entire time he was interviewed.  There was no evidence produced at the suppression hearing that appellant ever asked to leave or for a break.  Because appellant could not know whether such requests would have been denied, he could not reasonably feel he was being restrained to the point of arrest.

Additionally, the mere fact that appellant was the focus of the investigation is not sufficient to show custody.  Both the Court of Criminal Appeals and the Federal Supreme Court have held that “being the focus of a criminal investigation does not equate to custody.”  
Beckwith v. United States
, 425 U.S. 341, 96 S.Ct. 1612, 48 L. Ed.2d 1 (1976); 
Meek v. State
, 790 S.W.2d 618, 621 (Tex.Crim.App. 1990).  Rather, in determining custody questions, the courts are directed to look at all the relevant circumstances.  
Meek
, 790 S.W.2d at 621.

A crucial factor in this case is that appellant was permitted to leave upon his request to do so and was not constrained in any way from doing so.  Additionally, while the length of the interrogation is something to be considered, appellant was not interrogated for such an interminable length of time as to constitute a custodial situation.  While the police may have subjectively believed they had probable cause to arrest appellant, there is nothing in the record to show they ever informed appellant of that fact.  Moreover, although the record reflects that appellant was informed about the allegations against him, it is disputed whether he was ever told that there was probable cause for his arrest.  Thus, because the record does not reflect that the officers ever expressed to appellant their subjective beliefs about probable cause to arrest him, their subjective belief is irrelevant.  
See Dowthitt
, 931 S.W.2d at 254; 
see also Stansbury
, 511 U.S. at 323-24.

In sum, under the record before us, appellant was not in custody at the time he gave his oral statement and the trial court did not err in admitting it.  Appellant’s first point is overruled.

In his second point, appellant challenges the admission of computer-generated letters because, he argues, they were improperly authenticated, were irrelevant, and were more prejudicial than probative.  The State responds that the letters referred to matters about which only appellant and M.T. knew, that they were relevant to show appellant’s state of mind and his relationship with M.T. and, furthermore, that appellant did not meet his burden to show the letters were, in fact, more prejudicial than probative.

The standard to be used in reviewing the admission of evidence is abuse of discretion.  
Werner v. State
, 711 S.W.2d 639, 643 (Tex.Crim.App. 1986).  The trial court’s decision will only be reversed  if its action was a clear abuse of its discretion which occurs when the trial court’s action is “so clearly wrong as to lie outside that zone within which reasonable persons might disagree.”  
Cantu v. State
, 842 S.W.2d 667, 682 (Tex.Crim.App. 1992). 

During the State’s case-in-chief, the trial court held a hearing outside the presence of the jury to determine the letters’ admissibility.  At that hearing, the court heard testimony from M.T., M.T.’s sister, a CPS worker, and a guidance counselor. The court admitted the letters into evidence, ruling that they were properly authenticated, relevant and not more prejudicial than probative.

In deciding whether evidence is properly authenticated, we look to Rule of Evidence 901(a) which states: “The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.”  Tex. R. Evid. 901(a).  Rule 901(b) illustrates examples of proper authentication, and explicates that evidence which can be identified by distinctive characteristics and the like, can be authenticated by “appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in connection with circumstances.”  Tex. R. Evid. 901(b)(4).

The State relied upon the following references in the letters in attempting to show that appellant authored the letters: 1) M.T.’s recent trip with his mother, 2) M.T.’s favorite movies, 3) appellant’s computer user name, “Ran Man,” 4) appellant’s and M.T.’s prior disagreements, and 5) M.T.’s recent medical condition.  Appellant argues, and M.T. testified, that any of these items could possibly have been known by others.  However, M.T. also testified that one of the letters addressed a concern that he only confessed to appellant, namely that sometimes he felt that he acted like a snob.  In addition, although others might have known about his medical condition, M.T. testified that he only mentioned it to his father and appellant.  Finally, the fact that the letters signed off with appellant’s user name is a factor that the trial court could consider as indicating it was more likely than not that appellant sent the letters.  All the facts taken together could reasonably have been considered by the trial court as sufficient to constitute the “distinctive characteristics” addressed in Rule 901(b)(4). We find that the letters were sufficiently authenticated.

Appellant also argues that the letters were irrelevant.  Although he admits they espouse a romantic interest toward M.T., appellant contends that they express no sexual desire.  Rule of Evidence 401 defines relevant evidence to be “evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.”  To be relevant, evidence need not by itself prove or disprove a particular fact; it need only tend to prove or disprove some fact of consequence.  
Montgomery v. State
, 810 S.W.2d 372, 376 (Tex.Crim.App. 1990).  While the letters may not expressly convey appellant’s desire to have sex with M.T., they do, as appellant concedes, indicate his romantic interest, and tend to show a sexual desire toward M.T.  The letters need not actually state appellant’s intent; it is sufficient if they provide a small nudge toward proof that a sexual assault occurred.

Article 38.37 of the Code of Criminal Procedure also provides some support for the letters’ admission.  That article states that during the prosecution of a defendant for a sexual offense against a minor, “evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, including: 1) the state of mind of the defendant and the child; and 2) the previous and subsequent relationship between the defendant and the child.”  Tex. Code Crim. Proc. Ann. art. 38.37, § 2 (Vernon 2000).  The letters certainly shed light on these matters.  For example, the following excerpts indicate that appellant’s feeling towards M.T. extended beyond the normal heterosexual friendship: “[r]emember, I love you little man, like no one else can,” “I never want to be without you,” “I am very afraid of losing you Mark,” “as you know, I’m very attached to you,” and “Mark let me be the key to unlock the door to your heart forever.”  Further, the following passage tends to show actual sexual desire toward M.T.

This morning you left out to go to Amarillo and meet your mom’s partner.  Last night I’m not sure who was more excited, you or me.  I couldn’t sleep at all.  It seemed like everywhere around me I kept seeing reminders of you . . . .  Last night I watched Speed, Major Payne, Higher Learning, and one movie that really didn’t remind me of you, but it made me think about you.  It was called Embrace of the Vampire.  It was very sexually illicit.

We find that the letters were relevant to show appellant’s state of mind and desire toward M.T., as well as the relationship between them.

Finally, appellant argues that the letters were more prejudicial than probative and their admission into evidence violated Rule of Evidence 403.  Rule 403 provides that “although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.”  Tex. R. Evid. 403.  Appellant argues that the trial judge did not properly undertake the balancing test pointing to the judge’s statement that “most evidence is prejudicial.  That’s why one side or the other tries to get it in.”  However, Rule 403 does not require that the balancing test be articulated on the record.  
Hinojosa v. State
, 995 S.W.2d 955, 957 (Tex App.—Houston [14
th
 Dist.] 1999, no pet. h.).  Rather, a trial judge who overrules a 403 objection is presumed to have applied the proper balancing test in determining that the evidence is admissible.  
Id.  See also
 
Yates v. State
, 941 S.W.2d 357, 367 (Tex.App.—Waco 1997, pet. ref’d).

Further, the judge’s statement is not dissimilar to the court’s statement in 
Montgomery
 that “virtually all evidence proffered by a party to a lawsuit will be prejudicial to the opposing party.”  
Montgomery
, 810 S.W.2d at 378.  The court then went on to say that “only ‘unfair’ prejudice provides the basis for exclusion of relevant evidence.”  
Id. citing United States v. Jamil
, 707 F.2d 638, 644-45 (2d Cir. 1983).  “Unfair” prejudice is defined as an undue tendency to suggest a decision on an improper basis, often on an emotional basis.  
Id.

In reviewing a Rule 403 decision, we must give considerable freedom to trial judges in making their balancing evaluation. 
 Montgomery, 
810 S.W.2d at 378.  This is so because the trial judge is in a
 
superior position to determine the impact of the evidence.  
Id
. at 379.  Indeed, in 
Mozon v. State
, 991 S.W.2d 841, 847 (Tex.Crim.App. 1999), the court instructs, “[i]n reviewing the trial court’s balancing test determination, a reviewing court is to reverse the trial court’s judgment ‘rarely and only after a clear abuse of discretion.’”  In conducting our review, we must look at: 1) how compelling the letters serve to make appellant’s indecency with M.T. more probable; 2) the potential the letters had to impress the jurors in an irrational, and indelible, way;  3) the amount of time the State used in presenting the letters; and 4) the force of the State’s need for the letters to prove that appellant committed the offense.  
Id.

After considering these factors, we are convinced that the letters’ probative value outweighed any unfair prejudicial effect.  As we have discussed, the letters were strong evidence of appellant’s state of mind and make it more likely that he behaved indecently with M.T.  While the letters had potential to impress the jury, they were not so prejudicial as to affect the jury in an irrational manner.  Further, the fact that the jury convicted appellant of the lesser-included offense, rather than the first-degree felony with which he was originally charged, is compelling evidence that they were not irrationally prejudiced.  Although the prosecutor discussed the letters with several of the trial witnesses and mentioned them again in his closing argument, he did not emphasize them at such length that the jury would be improperly distracted from considering the indicted offense.  
See, e.g., Mozon
, 991 S.W.2d at 847.  Finally, the State had other probative evidence supporting appellant’s guilt and the letters were just one part of the overall mosaic of guilt the State created.  For instance, M.T.’s sister testified to her observations of appellant’s behavior toward M.T., which corroborated the information in the letters, showing “an unnatural attitude and relationship to explain the charged act - an act that would otherwise seem illogical and implausible to the average juror.”  
Ernst v. State
, 971 S.W.2d 698, 700 (Tex.App.—Austin 1998, no pet.).  Accordingly, we hold the trial court did not abuse its discretion in admitting the letters, and appellant’s second point is overruled.

In his third point, appellant argues that the trial judge should not have allowed a State’s witness to testify at the punishment stage because the State failed to include proper notice about the witness’s testimony in its response to his motion for notice of extraneous offenses.  Although appellant admits that the State notified him of its intent to have the witness testify, he complains that he was not formally notified of the extraneous acts about which the witness would testify and the county in, and the dates upon, which they occurred.  The State concedes it did not formally notify appellant about these matters but reasons that if that failure were error, it is subject to a harmless error analysis.

The point arises from Toby Ritchie’s testimony.  Ritchie averred that he knew appellant through M.T.  On one occasion, Ritchie asked appellant if he would teach him how to drive a standard shift automobile, because appellant owned a standard shift pickup.  Appellant agreed and picked Ritchie up at his house.  The witness testified that appellant told him some things that made him uncomfortable.  For instance, appellant told him that M.T. sat on the end of a plunger, presumably for sexual pleasure.  Appellant also told Ritchie that M.T.’s first sexual experience was with a man, but, when asked, would not divulge who the man was.  Further, Ritchie averred that appellant had asked him if he ever thought about “being with another man.”

In order to admit this evidence, article 37.07 § 3(a) of the Code of Criminal Procedure requires the State to notify appellant of its intent to call Ritchie, as well as to give notice of the county in, and the date on, which the incident occurred.  
See
 Tex. Code Crim. Proc. Ann. art. 37.07 § 3(g).  The statute requires that:

[o]n timely request of the defendant, notice of intent to introduce evidence under this article shall be given in the same manner required by Rule 404(b), Texas Rules of Criminal Evidence.  If the attorney representing the state intends to introduce an extraneous crime or bad act that has not resulted in a final conviction in a court of record . . . notice of that intent is reasonable only if the notice includes the date on which and the county in which the alleged crime or bad act occurred and the name of the alleged victim of the crime or bad act.

Tex. Code Crim. Proc. Ann. art. 37.07, § 3(g) (Vernon Supp. 2000).  Because the State concedes it did not comply with this provision, we assume arguendo, without expressly deciding, that the admission of this testimony was error.  In such instances, the State correctly argues, we must conduct a harm analysis to determine whether reversal is required.

The erroneous admission of this type of testimony does not equate constitutional error. 
Garza v. State
, 963 S.W.2d 926 (Tex.App.—San Antonio 1998, no pet)
.  
When a non-constitutional error occurs during trial, it will be disregarded as harmless if it did not affect an appellant’s substantial rights.  Tex. R. App. P. 44.2(a); 
see also King v. State
, 953 S.W.2d 266, 271 (Tex.Crim.App. 1997).  A substantial right has been affected if the error had a substantial and injurious effect or influence on the jury’s verdict.  
Id.
 at 271.  In evaluating the degree of harm, we examine the error and all its effects, such as:  1) the source of the error; 2) the nature of the error; 3) to what extent the erroneous matter was emphasized by the State; 4) the probable collateral implications of the error; 5) how much weight a juror would probably place upon the error; and 6) whether declaring the error harmless would encourage the State to repeat it with impunity.  
Harris v. State
, 790 S.W.2d 568, 587-88 (Tex. Crim.App. 1990).  Parenthetically, the 
Harris
 court was considering the old harmless error rule, which required a similar determination to that now required, 
i.e.
, whether the error was harmless beyond a reasonable doubt.  However, its citation and reliance upon 
Kotteakos v. United States
, 328 U.S. 750, 776, 66 S.Ct.1239, 1253, 90 L.Ed.2d 1557 (1946), in which the Supreme Court applied the federal harmless error statute to a variance between an indictment and the jury charge in a conspiracy trial renders the case applicable to the determination of whether a substantial right has been affected.      

In making our decision, we do not focus on whether the overwhelming evidence of appellant’s guilt exists.  
Harris
, 790 S.W.2d at 587.  Neither do we attempt to decide appellant’s guilt or innocence.  In sum, we need not reverse if, after examining the entire record, “we have fair assurance that the error did not influence the jury’s deliberations to appellant’s detriment or had but a slight effect.”  
Ladd v. State
, 3 S.W.3d 547, 566 (Tex.Crim.App. 1999).

After thoroughly reviewing the record, we do not believe the admission of Ritchie’s testimony affected the jurors’ decision to appellant’s detriment.  The State introduced Ritchie’s testimony as a prior bad act to show appellant’s propensity toward pedophilia.  However, Ritchie testified that appellant never touched him, never threatened to touch him, and he was not afraid of appellant’s harming him in any way.  The most harmful thing he testified to was that appellant made him feel uncomfortable.  Although appellant discussed some sexually explicit matters with Ritchie, there was no overt attempt to seduce him.  Also, the fact that the jury, in a case of this nature, recommended community supervision rather than imprisonment can be considered as an indication that the testimony did not affect their ability to rationally arrive at a verdict.  Ritchie’s testimony was brief and the State did not emphasize it in its summations.  Finally, from the record it does not appear that the State’s failure to furnish the notice was intentional; therefore, declaring the error to be harmless would not encourage the State to repeat it.  Consequently, the admission of Ritchie’s testimony did not affect appellant’s substantial rights.  Appellant’s third point is overruled.

Appellant argues in his fourth and final point that the trial court reversibly erred in admitting Ritchie’s testimony because it was not relevant and it was more prejudicial than probative.  We disagree.  As we have discussed, evidence is relevant if it has any tendency to make the existence of any fact more probable or less probable than it would be without the evidence.  
See
 Tex. R. Evid. 401.  The fact of consequence here is whether appellant had tendencies toward pedophilia to the point that he would be likely to sexually assault, or behave indecently with, other minors in the future.  Ritchie’s testimony was clearly relevant to show appellant’s interaction with minors and, if believed by the jury, could have been an indication that he was attempting to seduce Ritchie.  Thus, the testimony was relevant and the trial judge did not abuse his discretion in admitting it.

Furthermore, Ritchie’s testimony was not more prejudicial than probative.  Again, as we mentioned above, evidence is only inadmissible for being prejudicial if it has an undue tendency to suggest a decision on an improper basis.  
Montgomery
, 810 S.W.2d at 378.  We look to the 
Mozon
 factors discussed above to determine if the evidence was unfairly prejudicial.  In doing so, we hold that: 1) Ritchie’s testimony was relevant in its tendency to portray appellant as a pedophile; 2) there is little, if any, likelihood that his testimony impressed the jury in an irrational and indelible way; 3) the State spent minimal time in developing Ritchie’s testimony and in referring to it afterwards; and 4) Ritchie was one of only two prosecution witnesses in the punishment phase of trial, and therefore was a necessary witness to show appellant’s propensity toward pedophilia.  
Mozon
, 991 S.W.2d at 847.  Considering these factors, we conclude that the testimony’s probative value outweighed any prejudicial effect it might have had.  Appellant’s fourth point is overruled.

In final summary, all of appellant’s points are overruled and the judgment of the trial court is affirmed.   

John T. Boyd

Do not publish Chief Justice